FILED ___ ENTERED
LODGED ___ RECEIVED

FEB -6 2015    DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AEGEAN MARINE PETROLEUM S. A.,<br><br>    Plaintiff,<br><br> v.<br><br>M/V KAVO PLATANOS, her tackle, boilers, apparel, furniture, engines, appurtenances, etc.,<br><br> and<br><br>Certain Bunkers on board the M/V KAVO PLATANOS,<br><br>    Defendants *in rem,*<br><br> and<br><br>CANPOTEX SHIPPING SERVICES LTD., *et al.*,<br><br>    Defendants and Garnishee. | IN ADMIRALTY<br><br>CASE NO.: 15-CV-00172-RAJ<br><br>**VERIFIED COMPLAINT** |

Plaintiff, Aegean Marine Petroleum S. A., ("Aegean") complains of the defendants and alleges upon information and belief as follows:

## **PARTIES**

1. Plaintiff Aegean was and now is a limited liability company duly organized and existing under the laws of Greece.

2. Defendant M/V KAVO PLATANOS ("Vessel") was and now is engaged in the

VERIFIED COMPLAINT - 1

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

common and/or private carriage of cargo on the high seas between ports of the world, including the port of Ferndale, Washington and elsewhere in the United States, and during the pendency of process herein, is now or will be within the navigable waters of this District and within the jurisdiction of this Honorable Court.

3. Canpotex Shipping Services Ltd. ("CSSL"), a Canadian corporation, was the charterer of the Vessel at the time of the provision of marine fuel ("bunkers") to the Vessel, which is the subject of this Complaint, and by information and belief responsible to pay for those bunkers. Indy Maritime SA "(Indy") and Gourdomichalis Maritime SA ("GMSA"), both Marshal Islands corporations, were at the time of the provision of the bunkers to the Vessel, the subject of this complaint, and are presently, respectively the owner and manager of the Vessel.

## JURISDICTION AND VENUE

4. This is a case of Admiralty and Maritime jurisdiction pursuant to 28 U.S.C. §1333, and is an Admiralty or Maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Plaintiff proceeds as detailed herein, pursuant to Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("SAR") B (maritime garnishment and attachment, *quasi in rem*), C (maritime lien, *in rem*), and D (*in rem*, to try rights to maritime property, namely, the bunkers at issue in this Complaint).

5. This action is commenced pursuant to the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301, *et seq.*

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that the Vessel and Property which is the subject of this action is or soon will be located within this District.

## FIRST CAUSE OF ACTION: MARITIME LIEN
## AGAINST THE M/V KAVO PLATANOS FOR THE VESSEL'S
## FAILURE TO PAY FOR NECESSARIES PROVIDED TO THE VESSEL

7. Plaintiff repeats the foregoing paragraphs.

VERIFIED COMPLAINT - 2

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

8.       On or about October 16, 2014, the owners and/or operators and/or charterers and/or the agents of the M/V KAVO PLATANOS, namely, CSSL, Indy, and/or GMSA, entered into an agreement with Aegean, through their agent, O.W. Bunkers (U.K.) Ltd. ("OWB"), to arrange for the delivery of approximately 900 metric tons of bunker fuel to the Vessel at the port of Vancouver, British Columbia on or about October 18, 2014.

9.       True and accurate copies of Aegean's sales authorization and confirmation, as well as incorporated sales terms and conditions (the "Sale Documents") are **Exhibit 1 hereto**.

10.      Aegean's incorporated sales terms and conditions state in pertinent part as follows:

> 2. DEFINITIONS
>
> (a) "Seller" includes in addition to the Seller Itself, its servants, agents assigns, subcontractors and any and all other persons acting under the Seller's instructions in fulfillment, compliance or observance of the Agreement unless the context otherwise requires
>
> (b) "Buyer" means the party/ies so described in the Nomination Telex together with any agent, principal, associate, manager, partner, servant, parent, subsidiary, owner or shareholder thereof
>
> \* \* \*
>
> 10.5 Where Products are supplied to a vessel, in addition to any other security, the Agreement is entered into and Products are supplied upon the faith and credit of the Vessel. It is agreed and acknowledged that a lien over the Vessel is thereby created for the value of Products supplied and that the Seller in agreeing to deliver Products to the Vessel does so relying upon the faith and credit of the Vessel. The Buyer if not owner of the Vessel hereby expressly warrants that he has the authority of the owner to pledge the Vessel's credit as aforesaid and that he has given notice of the provisions of this clause to the owner. The Seller shall not be bound by any attempt by any person to restrict, limit or prohibit its lien or liens attaching to a Vessel unless notice in writing of the same is given to the Seller before it sends its Nomination to the Buyer.
>
> 11.      TITLE
>
> 11.1 Title in and to the Products delivered and/or property rights in and to such Products shall remain vested in the Seller until payment has been received by the Seller of all amounts due in connection with the respective delivery.
>
> 11.2 Until full payment of any amounts due to the Seller for whatever nature, has been made, the Buyer shall not be entitled to use the Products other than for

VERIFIED COMPLAINT - 3

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

the propulsing of the vessel, nor mix, blend, sell, encumber, pledge, alienate, or surrender the Products to any third party.

11.3 in case of breach of the Agreement by the Buyer the Seller is entitled to take back the Products without prior judicial intervention and without prejudice to all other rights or remedies available to the Seller.

11.4 In the event that the Products have been commingled with other products on board the vessel, the Seller shall have the same rights as above to such part of the commingled product as corresponds to the quantity of Product delivered.

* * *

18. APPLICABLE LAW AND JURISDICTION

.... For the sole benefit of the Seller, it is further agreed that the Seller may proceed against the Buyer, any third party or the vessel in such jurisdiction as the Seller in its sole discretion sees fit, *inter alia*, for the purpose of securing payment of any amount due to the Seller from the Buyer.

3. Aegean's sales confirmation stated further in pertinent part as follow:

CONFIRMATION)

VESSEL'S NAME  : KAVO PLANTANOS
BUYER: MV 'KAVO PLANTANOS' AND JOINTLY AND SEVERALLY OWNERS/MANAGING OWNERS/OPERATORS/MANAGERS/ DISPONANT OWNERS/CHARTERERS AND O.W. BUNKERS (UK) LTD

MERE RECEIPT OF THIS CONFIRMATION SIGNIFIES ACCEPTANCE OF RESPONSIBILITY FOR PAYMENT OF OUR BUNKER INVOICE BY EACH AND ALL OF THEM.

SELLER   : AEGEAN MARINE PETROLEUM S.A.
PHYS. SUPPLIER : AEGEAN MARINE PETROLEUM S.A.

* * *

A. SELLER'S TERMS AND CONDITIONS TO APPLY. COPY AVAILABLE AT :  http://www.ampni.com/aegean-terms-conditions.pdf

* * *

I. BUYER ACKNOWLEDGES THAT A LIEN OVER THE VESSEL IS CREATED FOR THE VALUE OF THE PRODUCT(S) SUPPLIED AND

VERIFIED COMPLAINT - 4

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

THAT THE SELLER IS RELYING UPON THE FAITH AND CREDIT OF THE VESSEL.

4. On or about October 22, 2014, pursuant to the Sale Documents, Aegean provided 900 metric tons of bunker fuel to the vessel at the port of Vancouver, British Columbia, which the Master or Chief Engineer of the Vessel, on behalf of the Vessel and on behalf of CSSL, Indy, and GMSA, accepted and acknowledged by stamping and signing Aegean's bunker delivery receipt for the delivery. A true and accurate copy of Aegean's bunker delivery receipt stamped and signed by the Master or Chief Engineer of the Vessel is attached hereto as **Exhibit 2**.

5. Aegean's bunker delivery receipt states in pertinent part as follows:

> YOU ARE KINDLY REQUESTED TO WITNESS THE OPENING AND CLOSING METER READING AND BARGE SOUNDINGS BEFORE COMMENCING AND AFTER COMPLETION OF BUNKERING OPERATIONS. THESE READINGS WILL BE USED AS FINAL MEANS OF MEASUREMENT AND WILL BE THE OFFICIAL BASIS IN DETERMINING THE QUANTITY DELIVERED TO VESSEL. OWNERS AND/OR OPERATORS AND/OR CHARTERERS OF THE VESSEL TO BE JOINTLY AND SEVERALLY LIABLE FOR THE PAYMENT OF ALL AND ANY BUNKERS SUPPLIED HEREUNDER AND UNTIL THE AMOUNT DUE UNDER THE INVOICE FOR THEM HAS BEEN PAID IN FULL THE PROPERTY OF SUCH BUNKERS REMAIN WITH THE SUPPLIERS ALL DISPUTES THAT MIGHT ARISE FROM THIS BUNKERING OPERATION WILL BE SETTLED BY THE GREEK COURTS. THE SAMPLE IS VALID FOR(15) FIFTEEN DAYS ONLY.
> B. DECLARATION: THE FUEL OIL COMPLIES WITH REGULATIONS 14 AND 18 OF ANNEX VI OF MARPOL 73/78.

6. On or about October 31, 2014, Aegean issued its Invoice No. V242 to Master/Owners/Managing Owners/Operators of the Vessel by OWB and to OWB in the

VERIFIED COMPLAINT - 5

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

amount of $463,050 for the delivery of bunkers to the vessel. A true and accurate copy of Aegean's Invoice No. V242 is attached hereto as **Exhibit 3.**

7. Pursuant to Invoice No. V242, payment was due to Aegean on or before November 22, 2014.

8. Aegean has not been paid for the amounts due under Invoice No. V242 despite repeated demands by Aegean for payment.

9. Aegean possesses a maritime lien against the Vessel for the full amount due under Aegean's Invoice No. V242, plus interest and costs.

10. Aegean has the right to exercise all the rights and remedies provided to holders of maritime liens, including the right to enforce its maritime lien against the Vessel pursuant to the Commercial Instruments and Maritime Lien Act, 46 U.S.C. §§ 31301, *et seq.*

11. Aegean has suffered damages as a result of the failure of the Vessel to pay the amounts owed for the bunker fuel provided to the Vessel by Aegean.

12. Pursuant to the SAR C, Aegean requests this Court to issue a warrant of arrest against the M/V KAVO PLATANOS as demanded below.

### SECOND CAUSE OF ACTION: REQUEST FOR ISSUE OF WRITS OF MARITIME ATTACHMENT AND GARNISHMENT

13. Plaintiff repeats the foregoing paragraphs.

14. At all relevant times, the Vessel's registered owner was Indy, her operator was GMSA, and charterer, CSSL.

15. On information and belief, Indy and/or GMSA and/or CSCL has/have or will have property within this District, namely, the Vessel and the bunkers aboard the Vessel.

16. These Defendants cannot be found within this District pursuant to SAR B, and this Court therefore should issue an Order directing the Clerk of Court to issue Process of Maritime Attachment pursuant to SAR B attaching all of Defendants' tangible or intangible property within the District held by any Garnishee on behalf of defendants, up to the amount of

VERIFIED COMPLAINT - 6

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

at least $463,050 plus interest, costs and contractual attorneys' fees to secure Plaintiff's claim, and that all persons claiming any interest in the same be cited to appear and, pursuant to Supplemental Rule B, answer the matters alleged in the Verified Complaint, as more fully set out above and below.

### THIRD CAUSE OF ACTION: REQUEST FOR ARREST OF ALL BUNKERS ON BOARD THE M/V KAVO PLATANOS

17.     Plaintiff repeats the foregoing paragraphs.

18.     Plaintiff's sales terms and conditions, set out above provide that Plaintiff retains title to the bunkers sold to the Vessel until Plaintiff is paid for the bunkers.

19.     Defendants obtained no ownership interest in the bunkers because of their failure to pay Aegean, and also pursuant to their agent, OWB's, terms and conditions, which provide in pertinent part as follows:

> H.1 Title in and to the Bunkers delivered and/or property rights in and to such Bunkers shall remain vested in the Seller until full payment has been received by the Seller of all amounts due in connection with the respective delivery. The provisions in this section are without prejudice to such other rights as the Seller may have under the laws of the governing jurisdiction against the Buyer or the Vessel in the event of non payment.
>
> H.2 Until full payment of the full amount due to the Seller has been made and subject to Article G.14 hereof, the Buyer agreed that it is in possession of the Bunkers solely as Bailee for the Seller, and shall not be entitled to use the Bunkers other than for the propulsion of the Vessel, nor mix, blend, sell, encumber, pledge, alienate, or surrender the Bunkers to any third party or other Vessel.
>
> H.3 In case of non or short payment for the Bunkers by the Buyer, the Seller is entitled (but not obliged) to repossess the Bunkers without prior juridical intervention, without prejudice to all other rights or remedies available to the Seller.
>
> H.4 In the event that the Bunkers have been mixed with other bunkers on board the Vessel, the Seller shall have the right to trace its proprietary interest in the Bunkers into the mixed bunkers and/or a right of lien to such part of the mixed bunkers as corresponds to the quantity or net value of the Bunkers delivered.

VERIFIED COMPLAINT - 7

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

H.5 The provisions of this Chapter H do not prejudice or in any way limit the Seller's right to arrest/attach the Vessel and/or sister ship and/or any sister or associate ship and/or other assets of the Buyer (or the Owner of the Vessel or any other party liable), wherever situated in the world, without prior notice.

H.6 Where, notwithstanding these conditions, title in and to the Bunkers delivered has passed to the Buyer and/or any third party before full payment has been made to the Seller, the Buyer shall grant a pledge over such Bunkers to the Seller. The Buyer shall furthermore grant a pledge over any other Bunkers present in the respective Vessel, including any mixtures of the delivered Bunkers and other bunkers. Such pledge will be deemed to have been given for any and all claims, of whatever origin and of whatever nature that the Seller may have against the Buyer.

20. Pursuant to SAR D, Aegean requests this Court to issue a warrant of arrest against all bunkers remaining on board the KAVO PLATANOS, and for a determination that such bunkers are the property of, and titled to, Aegean.

WHEREFORE, plaintiff Aegean prays:

a. That judgment in the sum of at least $463,050 plus interest and costs be entered in favor of plaintiff and against the M/V KAVO PLATANOS, in rem, together with interest, costs and attorneys' fees;

b. That process in due form of law issue against the Vessel pursuant to SAR C, citing any claimant to the Vessels to appear and answer under oath all and singular the premises alleged in the Verified Complaint;

c. That this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to SAR B attaching all of Defendants' tangible or intangible property or any other funds held by any garnishee, which are due and owing to these defendants up to the amount of at least at least $463,050 plus interest, costs and contractual attorneys' fees due to plaintiff, to secure the Plaintiff's claim, and that all persons claiming any interest in the same be cited to appear and, pursuant to SAR B, answer the matters alleged in the Verified Complaint;

d. That pursuant to the SAR D, this Court issue a warrant of arrest against all bunkers remaining on board the M/V KAVO PLATANOS, determining and entering judgment that such bunkers are the property of, and titled to, Aegean; and

VERIFIED COMPLAINT - 8

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

e.  That Aegean have such other, further and different relief as this Court may deem just and proper in the premises.

DATED this 6th day of February, 2015.

NICOLL BLACK & FEIG PLLC

_____
Christopher W. Nicoll, WSBA #20771
Jeremy B. Jones, WSBA #44138
*Attorneys for Plaintiff*

OF COUNSEL

(*pro hac vice applications forthcoming*)

J. Stephen Simms
jssimms@simmsshowers.com
John T. Ward
jtward@simmsshowers.com
Marios J. Monopolis
mjmonopolis@simmsshowers.com
Simms Showers LLP
201 International Circle
Baltimore, Maryland 21030
Telephone 410-783-5795

VERIFIED COMPLAINT - 9

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

# VERIFICATION

1. I am admitted to practice before the Court.

2. I have read the foregoing Complaint and I believe the contents thereof are true.

3. As permitted under LAR 105, the reason this Verification is made by me and not by Plaintiff is that Plaintiff is a foreign corporation, without any authorized corporate officers within the District. Plaintiff has authorized me to make this Verification.

4. The sources of my information and belief are documents provided to me and statements made to me by representatives of Plaintiff, including those attached as Exhibits to the Verified Complaint.

5. Pursuant to SAR B and LAR 115(b), I caused the following efforts to be made to confirm that defendants Indy and/or GMSA and CSCL are not found within the District, or any adjacent District, within the meaning of SAR B:

    A. Caused a check of the respective state corporate information directories of Washington, Oregon, and Idaho, finding no listing for any of these defendants to indicate that they are incorporated or residing in Washington, or have any registered agent here; and

    B. Caused to be conducted a search using Google, finding no listing in the United States for any of these defendants, and confirming that their offices are all located outside of the United States.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on February 6, 2015.

_____
Christopher W. Nicoll, WSBA #20771

VERIFIED COMPLAINT - 10

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

# EXHIBIT 1

```
Message Number: 1628892
From: Aegean Marine Petroleum SA - Vancouver Sales
To: OW UK
Sent: Thursday, Oct 16, 2014 22:26 (UTC +03:00)
Subject: VANCOUVER | KAVO PLANTANOS | 10141564
```

```
AUTHORISED BY   : BM

BUNKER CONFIRMATION
===================

FM                : AEGEAN MARINE PETROLEUM S.A.
                    (ISO 9001:2008 CERTIFIED BY LLOYD'S/CERTIFICATE NR
360203)

TO                : O.W. BUNKERS (UK) LTD
ATTN              : ANDERS STOM

REF. NO.          : 10141564
                    (ABOVE REF NO.SHOULD BE MENTIONED ON YOUR
CONFIRMATION)

VESSEL'S NAME     : KAVO PLANTANOS
BUYER             : MV 'KAVO PLANTANOS' AND JOINTLY AND SEVERALLY
                    OWNERS/MANAGING OWNERS/OPERATORS/MANAGERS/
                    DISPOSANT OWNERS/CHARTERERS AND
                    O.W. BUNKERS (UK) LTD
                    MERE RECEIPT OF THIS CONFIRMATION SIGNIFIES
                    ACCEPTANCE OF RESPONSIBILITY FOR PAYMENT OF
                    OUR BUNKER INVOICE BY EACH AND ALL OF THEM.
SELLER            : AEGEAN MARINE PETROLEUM S.A.
PHYS. SUPPLIER    : AEGEAN MARINE PETROLEUM S.A.
PORT              : VANCOUVER BC
DEL.DATES         : 19/23-OCT-2014
GRADES            : IFO 380 CST
QUANTITIES        : 900 MTS
PRICE             : USD 504.50 PMT
BARGING           : USD 9000 BARGING
COMMISSION        : N/A

AGENTS            : CANPOTEX
SPECS             : ISO 8217:2010

PAYMENT TERMS:
==============

WITHIN MAX 30 DAYS FROM DELIVERY DATE BY TT (AS PER INVOICE
INSTRUCTIONS).
ALL BANKING CHARGES ARE FOR BUYERS ACCOUNT.
LATE PAYMENT WILL INCUR AN INTEREST OF 1.5% PER MONTH OR PRO-RATA.

IMPORTANT:
==========

VSL MUST GIVE 72/48/24/12 HRS ETA NOTICE TO THE STATION.
NO "NO-LIEN" STAMP WILL BE ACCEPTED ON OUR DELIVERY RECEIPT.

REMARKS:
========
```



## GENERAL TERMS AND CONDITIONS FOR THE SALE OF
## MARINE BUNKER FUELS AND LUBRICANTS
## VALID AS FROM 1ST SEPTEMBER 2000

### 1. INTRODUCTION
This is a statement of the general standard terms and conditions under which AEGEAN MARINE PETROLEUM S.A. (A.M.P.), of Liberia (the Seller), (with representative offices in Switzerland and Piraeus), is prepared to enter into a Bunkering Agreement (the "Agreement") with another party (the Buyer) to supply to a Vessel marine bunker fuels, and/or lubricants (the "Products"). These terms and conditions may be referred to as "A.M.P. GENERAL TERMS & CONDITIONS OF MARINE BUNKER SALE".
Each Agreement will be as specifically negotiated between the Seller and the Buyer as evidenced by the Seller's Nomination Telex (the "Nomination Telex") and in the event of any conflict between the present terms and the conditions and the terms of the Nomination Telex, the terms of the latter shall prevail.

### 2. DEFINITIONS
(a) "Seller" includes in addition to the Seller Itself, its servants, agents assigns, subcontractors and any and all other persons acting under the Seller's instructions in fulfillment, compliance or observance of the Agreement unless the context otherwise requires
(b) "Buyer" means the party/ies so described in the Nomination Telex together with any agent, principal, associate, manager, partner, servant, parent, subsidiary, owner or shareholder thereof
(c) "Vessel" means the vessel, ship or craft duly nominated to receive Products as specified in the Nomination Telex
(d) "Supplying Company" means the person/company which physically supplies the Products to the Vessel together with these persons'/companies' servants, agents, successors, sub-contractors and assignees.
(e) "Point of Delivery" means the precise place at which delivery of the Products is to be effected as provided in the Nomination Telex, or as thereafter confirmed, advised or revised by the Seller or the Supplying Company.
(f) "Price" means the basic cost of Products calculated by multiplying the unit price stated in the Nomination Telex by the quantity of Products delivered to the Vessel.

### 3. NOMINATION
3.1 - All information regarding the delivery of the Products (i.e. vessel's name, agents, E.T.A., quantity, grade etc) will be notified by the Buyer to the Seller in writing. Any change to the above will be notified in writing by ; the Buyer to the Seller on due time prior to the delivery,

3.2 The Buyer shall inform the Seller directly or through Buyer's Agent at least 48 hours prior, (excluding weekends and holidays of vessel's readiness to receive delivery and the exact required quantity of the Products. Such notice shall be deemed cancelled if the Vessel has not arrived within 2 days after the Vessel's earliest estimated lifting date, as per the Nomination Telex. In such a case, the Seller reserves the right to refuse delivery of the Products, as already nominated or to renegotiate the prices/quantities.

### 4. DELIVERY
4.1 Delivery of the Products shall be effected in one or more consignments at the Point of Delivery by such means as the Seller shall deem appropriate in the circumstances.

4.2 The Buyer shall make all connections or disconnections and provide all necessary equipment to receive promptly each and every consignment of the delivery.

4.3 Seller shall not be liable to the Buyer for any loss or demurrage due to congestion of the terminal, or prior commitments of the available barges.

4.4 The Seller shall not be required to deliver Products into any of the Vessel's tanks which are not regularly used for bunkers.

4.5 if the Buyer causes delays to Seller's or Supplying Company's facilities in effecting deliveries, Buyer shall pay demurrage at Seller's or Supplying Company's established rates, and reimburse the Seller or the Supplying Company for all other expenses in connection therewith.

4.6 Where delivery is required during other than regular business hours, and is permitted by applicable regulations. Buyer shall pay all overtime and extra expenses incurred.

4.7 The Sellers' responsibility shall cease and delivery of the Products shall be deemed completed, and risk of loss, damage, deterioration, depreciation, evaporation, etc shall pass to the Buyer at Vessel's permanent flange connection.

### 5. DOCUMENTS
On completion of the delivery the Master of the Vessel or Buyer's representative shall give to the Supplying Company any form required by the Supplying Company properly signed and stamped of which one copy shaii be retained by the Master or the representative of the Buyer.

### 6. PRODUCTS' QUALITY AND QUANTITY DETERMINATION
6.1 Products shall meet specifications that are applicable at the time and place of delivery, The Buyer shall be solely responsible for the selection and acceptance of Products tendered for delivery to the Vessel.

6.2 Three representative sample -bottles, of each grade fully sealed and stamped, shall be taken throughout the delivery operation prior to the Products leaving either shore tanks, tank truck, or barge to the vessel's tank samples will not be accepted. One sealed sample shall be handed to the Master of the vessel receiving the Products and the other two will be retained by the Supplying Company, Any dispute as to the quality of the Products delivered shall be determined finally and conclusively by analysis of the third representative sample retained by the Supplying Company by an expert appointed jointly by the Buyer and the Seller.

6.3 Bulk deliveries ex-barges, wagons and vehicles must be checked by tank-dipping to measure the contents and ensure full turn-out. Flow meters must be checked for seals correct settings and calibration and general condition. All these checks must be carried out before and after delivery of each consignment and each barge, wagon or vehicle tank load, The delivery must be supervised at all times and care must be taken in ensuring that all documentation is complete and accurate before signing and stamping, Any alleged discrepancies can only be accepted in the form of a "Letter of Protest". No comments will be allowed to be written on the delivery receipt. The Seller will not accept any claims for short delivery or bad quality where these receiving procedures are not followed.

6.4 An Officer of the Vessel's crew or other senior representative of the Buyer is requested to witness the opening and closing meter readings and road truck/barge soundings or ullages before and after the completion of the bunkering operations. These readings will be used as a final mean of measurement. The Seller will not accept a claim for short delivery based upon figures obtained by measuring Products in the receiving Vessel's tanks.
No quantity dispute will be accepted should vessel's representative refuse to witness barge figures (ullages or soundings).

6.5 Surveyors appointed by the Buyer are always subject to Seller's approval.

### 7. RESTRICTIONS TO USE
Unless otherwise agreed the Buyer undertakes that the Products supplied under the Agreement will be used solely for the bunkering requirements of the Vessel to which they are delivered.

### 8. PRICES
8.1 The Price payable by the Buyer to the Seller for the Products is stated on the Nomination Telex, and it shall remain effective until the completion of delivery.

8.2 The Price is valid for a 5 days range namely 2 days before and 2 days after the vessel's earliest ETA (or as per Nomination Telex).

### 9. FURTHER COSTS
9.1 In addition to the Price of the Products the Buyer agrees to pay for any charges raised in respect of taxes, freight, barge, vehicle, wagon or clean up costs including overtime, mooring/unmooring charges or port dues etc. Also, any expenses created for the calling-in of an independent surveyor in order to settle any quantity dispute, as well as laboratory analyses for any quality dispute raised by the Buyer but eventually not verified.

9.2 In the event that the Vessel is unable for any reason to receive the nominated Products and no sufficient notice has been given to the Seller for such inability the Buyer is liable to pay cancellation charges (minimum USD 300.00)

9.3 The Buyer agrees to pay any expenses incurred as a result of the master of the Vessel rejecting the whole or any part of the nominated Products.

### 10. PAYMENT AND FINANCIAL RESPONSIBILITY
10.1 The value of Products together with extra charges, if any, shall be paid by the Buyer to the Seller in full, within thirty (30) calendar days from the date of delivery and always according to Seller's payment instructions and in the currency shown in relevant invoice. Should the due date for payment fall on Saturday, Sunday or Public Holiday then payment should be received by the previous working day.

10.2 Unless otherwise agreed, payment shall be made by irrevocable telegraphic transfer and all banking charges will be for Buyer's account. Delivery documents shall be provided to Buyer wherever possible, however payment shall not be conditional upon receipt of such documents.

10.3 Overdue payments will attract a financial charge of 1,5% per calendar month on the outstanding sum calculated on a daily basis from the due date until the full payment is received by the Seller's bank.

10.4 If the Buyer's credit is deemed by the Seller to be impaired or unsatisfactory, the Seller may (without prejudice to its other rights) require the Buyer at the Seller's option either to pay cash before delivery, or to provide security satisfactory to the Seller. In the event of failure by the Buyer to comply with the Seller's requirement, the Seller shall have no obligation to make delivery and may terminate the Agreement by giving notice to this effect to the Buyer.

10.5 Where Products are supplied to a vessel, in addition to any other security, the Agreement is entered into and Products are supplied upon the faith and credit of the Vessel. It is agreed and acknowledged that a lien over the Vessel is thereby created for the value of Products supplied and that the Seller in agreeing to deliver Products to the Vessel does so relying upon the faith and credit of the Vessel. The Buyer if not owner of the Vessel hereby expressly warrants that he has the authority of the owner to pledge the Vessel's credit as aforesaid and that he has given notice of the provisions of this clause to the owner. The Seller shall not be bound by any attempt by any person to restrict, limit or prohibit its lien or liens attaching to a Vessel unless notice in writing of the same is given to the Seller before it sends its Nomination to the Buyer.

10.6 No disclaimer stamp of any type if applied on the delivery receipt will change or waive the Sellers' rights against the Vessel, or waive the Vessel's ultimate responsibility for the debt incurred through the Agreement.

### 11. TITLE
11.1 Title in and to the Products delivered and/or property rights in and to such Products shall remain vested in the Seller until payment has been received by the Seller of all amounts due in connection with the respective delivery.

11.2 Until full payment of any amounts due to the Seller for whatever nature, has been made, the Buyer shall not be entitled to use the Products other than for the propulsing of the vessel, nor mix, blend, sell, encumber, pledge, alienate, or surrender the Products to any third party.

11.3 In case of breach of the Agreement by the Buyer the Seller is entitled to take back the Products without prior judicial intervention and without prejudice to all other rights or remedies available to the seller.

11.4 In the event that the Products have been commingled with other products on board the vessel, the Seller shall have the same rights as above to such part of the commingled product as corresponds to the quantity of Product delivered.

**12. INDEMNITIES**
12.1 The Buyer agrees to indemnify the Seller against all damages and liabilities arising from any acts or omissions of the Buyer or its agents and servants or the Vessel's officers or crews in connection with the sale and supply of the Products.

12.2 In the event that this Agreement is signed by an agent acting for and on behalf of a principal disclosed or undisclosed, then such agent shall be liable not only as agent but also for the performance of all the obligations of a principal under this Agreement.

**13. CLAIMS**
13.1 Any dispute as to the quantity delivered must be noted at the time of delivery in a letter of protest. Any claim as to short delivery shall be presented by the Buyer immediately upon completion of delivery, failing which any such claim shall be deemed to be waived and absolutely barred.
13.2 Claims concerning quality shall have to be submitted to the Seller in writing within 15 days from delivery, failing which the rights to complain or claim compensation of whatever nature shall be deemed to have been waived and absolutely barred for all times. If it is alleged that any equipment or machinery has been damaged by defective Products, full details must be given to the Seller at the earliest opportunity and the item must be preserved and made available for inspection on demand at any reasonable time or times to the Seller or its representative, otherwise no such claim shall be accepted by the Seller.

**14. LIABILITY**
14.1 To the extent permitted by Law the Seller shall not be liable to the Buyer for any loss or damage including loss of profit or any other consequential loss whatsoever arising from any cause whatsoever whether in contract, tort or otherwise including the negligence of the Seller, its servants, agents or subcontractors.

14.2 Notwithstanding the foregoing in the event that the Seller is found to be liable to the Buyer, the total amount payable by way of compensation shall not exceed the value charged to the Buyer for the Products supplied under this Agreement. It is a precondition to the payment of any compensation by the Seller that all sums standing due to the Seller from the Buyer are first paid and settled.

**15. FORCE MAJEURE**
All orders hereunder shall be filled with reasonable promptness, neither Seller or Buyer shall be held responsible for any losses, resulting if the fulfillment of any terms or provisions hereof shall be delayed or prevented by compliance with any regulation or other government restriction or by compliance with any order or request of any government authority or person purporting to act therefore, or other disorders, wars, acts of enemies, strikes, lockouts, fires, floods, acts of God, arrest or restraint of princes, perils of the sea, accidents of navigation, breakdowns or injury to ships, failure of or interference with supply from Sellers' sources of supply, breakdown or injury to, or expropriation or confiscation of the facilities used for the production, transportation, receiving, manufacturing, handling or delivery of the Products.
If the Seller shall suffer any loss of tanker or barge tonnage, or if compliance with an order or request of any Governmental authority shall reduce the tanker of barge tonnage available for the normal movement of the Products the obligation to make deliveries hereunder may be reduced at Seller's option approximately in proportion to such loss or reduction. Seller shall not be required to make upon any deliveries omitted in accordance with this section.

**16. ENVIRONMENTAL PROTECTION**
If a spill occurs while Products are being delivered hereunder, Buyer shall promptly take such action as is reasonably necessary to remove the spilled Products and minimize the effects of such spills. Seller is hereby authorized, at its option on notice to and at the expense of the buyer, to take such measures and incur such expenses (whether by employing its own resources or by contracting with others) as are reasonable necessary in the judgment of the Seller to remove the spilled Products and minimize the effects of such spills. Buyer shall cooperate and render such assistance as is required by Seller in the course of such action. All expenses, claims, loss, damage liability and penalties arising from spills shall be borne by the party that caused the spill by negligence or omission. If both parties have acted negligently, all expenses, claims, loss, damage, liability and penalties shall be divided between the parties in accordance with the respective degree of negligence. The burden of proof to show Seller's negligence shall be on the Buyer.

**17. MISCELLANEOUS**
17.1 Not withstanding anything to the contrary expressed or implied else-where herein, the Seller (without prejudice to its other rights) may at its sole discretion terminate this Agreement, on notifying the Buyer either orally (confirming such notification in writing) or by notice in writing, in the event that a liquidator (other than for amalgamation or reconstruction purposes) is appointed in respect of the assets and/or undertaking of the Buyer or any of its associated companies, or the Buyer or any such associated company, enters into an arrangement with its creditors under any applicable law, or if the Seller has a reason to anticipate any such appointment, arrangement or composition.

17.2 This constitutes the entire Agreement between the parties covering the subject matter. There are no other agreements which constitute any part of the consideration for, or any conditions to, either party's compliance with its obligations under this Agreement. Any implied warranties, conditions and agreements whatsoever are hereby expressly excluded and extinguished. No modifications shall be binding unless in writing and signed. The right of either party to require strict performance shall not be affected by any prior waiver or course of dealing. Any termination shall be without prejudice to accrued rights. All rights and remedies are cumulative, and election of one remedy shall not exclude the other.

**18. APPLICABLE LAW AND JURISDICTION**
Expect as otherwise expressly agreed to in writing, the Agreement its performance and enforcement is governed by the Greek Law. All disputes arising in connection with this agreement or any agreement resulting hereof shall be referred to the Courts of Piraeus. For the sole benefit of the Seller, it is further agreed that the Seller may proceed against the Buyer, any third party or the vessel in such jurisdiction as the Seller in its sole discretion sees fit, inter alia, for the purpose of securing payment of any amount due to the Seller from the Buyer.

A. SELLER'S TERMS AND CONDITIONS TO APPLY. COPY AVAILABLE AT :
   http://www.ampni.com/aegean-terms-conditions.pdf
B. SHIP'S TANKS SAMPLES AND FIGURES WILL NOT BE VALID. BARGE/SHORE
   SAMPLES AND FIGURES ARE ALWAYS VALID.
C. NO QUANTITY DISPUTE WILL BE ACCEPTED SHOULD VESSELS REPRESENTATIVE
   REFUSE TO WITNESS BARGE/SHORE TANKS FIGURES (ULLAGES OR SOUNDINGS).
D. SURVEYORS APPOINTED BY BUYERS ARE ALWAYS SUBJECT TO SUPPLIERS
   APPROVAL AND THEIR FINDINGS ONBOARD RECEIVING VESSEL WILL NOT BE CONSIDERED
   AS FINAL AND BINDING.
E. THERE IS A TIME LIMIT OF 15 DAYS FROM DATE OF DELIVERY, FOR
   NOTIFICATION OF CLAIMS RELATING TO QUALITY AND AN IMMEDIATE
   REPORT FOR ANY CLAIMS RELATED TO QUANTITY.
F. LOCAL TAXES, CUSTOMER CHARGES, OVERTIME, VAT ETC. IF ANY WILL BE
   FOR THE BUYERS ACCOUNT.
G. MASTER/OWNERS/AGENTS OR OTHER PARTIES CONCERNED TO KEEP SUPPLIER
   NOTIFIED OF VSL'S EXACT TIME/DATE FOR SUPPLY. VSL MUST GIVE 72/48/24/12
   HRS ETA NOTICE.
H. CANCELLATION OF STEM OR REDUCTION IN QUANTITY IS SUBJECT TO CANCELLATION
   CHARGES.
I. BUYER ACKNOWLEDGES THAT A LIEN OVER THE VESSEL IS CREATED FOR THE VALUE OF
   THE PRODUCT(S) SUPPLIED AND THAT THE SELLER IS RELYING UPON THE FAITH
   AND CREDIT OF THE VESSEL.

=================================================================

THANK YOU FOR CONCLUDING THIS BUSINESS WITH AEGEAN MARINE PETROLEUM S.A.
=================================================================

BEST REGARDS,

AMP / AEGEAN AMERICAS

TAX IDENTIFICATION CODE (TIC) : 18001995S
VAT REGISTRATION NUMBER       : 90002597I


N.B.
===
VISIT OUR WEBSITE ADDRESS www.ampni.com

EXHIBIT 2



# AEGEAN MARINE PETROLEUM SA

ADDRESS: 36 VYRONOS AVENUE, 8TH FLOOR, FLAT/OFFICE 803
1506 NICOSIA, CYPRUS   TEL: +35722 451290   FAX: +35722 544124
EMAIL: marinefuels@ampni.com

BS EN ISO 9001:2000
REGISTERED COMPANY
CERTIFICATE NO. 360203
MEMBER OF
IBIA

**DATE OF ISSUE:**
**VESSEL:** MV KAVO PLATANOS
**IMO:** 9612088
**PORT/DOCK:** VANCOUVER B.C @ NEPTUNE
**DELIVERY DATE:** OCT 22 14
**CUSTOMER:** 10141564

| GRADE | ENVIR. QUANTITY KGMS | ENVIR. QUANTITY LTRS | LTRS AT 15°C | BILLING QUANTITY M.T. | DENSITY AT 15°C |
|---|---|---|---|---|---|
| IF-380 | | 941505 | 912224 | 900.000 MT | .9866 |
| SULPHUR (% m/m) 2.20% | | | | | AVERAGE TEMPERATURE 60 °C  .9689 |

Quantity (written in full) _NINE HUNDRED METRIC TONNES_

| | DATE | TIME | METHOD OF DELIVERY |
|---|---|---|---|
| ARRIVED | OCT 22 14 | 07:00 | BARGE ☑ PT-22  TRUCK ☐   EX-PIPE ☐ |
| MADE FAST | | 07:40 | YES/NO |
| START PUMPING | | 08:40 | ☑ ☐ SHIPS ENGINEER INVITED TO WITNESS SOUNDING |
| FINISHED PUMPING | | 13:00 | ☑ ☐ SHIPS ENGINEER WITNESSED SOUNDINGS BEFORE |
| | | | ☑ ☐ SHIPS ENGINEER WITNESSED SOUNDINGS AFTER |
| | | | ☑ ☐ SHIPS ENGINEER WITNESSED SAMPLING |
| | | | ☐ ☐ SAMPLE(S) OF THIS DELIVERY PASSED TO SHIPS CH. ENGINEER |

A. YOU ARE KINDLY REQUESTED TO WITNESS THE OPENING AND CLOSING METER READING AND BARGE SOUNDINGS BEFORE COMMENCING AND AFTER COMPLETION OF BUNKERING OPERATIONS. THESE READINGS WILL BE USED AS FINAL MEANS OF MEASUREMENT AND WILL BE THE OFFICIAL BASIS IN DETERMINING THE QUANTITY DELIVERED TO VESSEL. OWNERS AND/OR OPERATORS AND/OR CHARTERERS OF THE VESSEL TO BE JOINTLY AND SEVERALLY LIABLE FOR THE PAYMENT OF ALL AND ANY BUNKERS SUPPLIED HEREUNDER AND UNTIL THE AMOUNT DUE UNDER THE INVOICE FOR THEM HAS BEEN PAID IN FULL THE PROPERTY OF SUCH BUNKERS REMAIN WITH THE SUPPLIERS. ALL DISPUTES THAT MIGHT ARISE FROM THIS BUNKERING OPERATION WILL BE SETTLED BY THE GREEK COURTS. THE SAMPLE IS VALID FOR (15) FIFTEEN DAYS ONLY.
B. DECLARATION: THE FUEL OIL COMPLIES WITH REGULATIONS 14 AND 18 OF ANNEX VI OF MARPOL 73/78.

| FOR ACCOUNT AEGEAN MARINE PETROLEUM SA | RECEIVING VESSEL | BARGE SAMPLE |
|---|---|---|
| [Stamp: BARGE "PT22" VANCOUVER] [signature] | VESSEL'S STAMP [Stamp: M/V KAVO PLATANOS INDY MARITIME MAJURO 4261] CAPTAIN AND/OR CHIEF ENGINEER [signature] | 36824434 |
| | | **SHIP'S SAMPLE** 36824420 |
| | | **MARPOL SAMPLE** 36824448 |

"BUNKER DELIVERY RECEIPT"

EXHIBIT 3




**AEGEAN** marine petroleum

*Always at your service*

| BILL TO | | VOUCHER | ISSUE DATE | No. |
|---|---|---|---|---|
| Master/Owners/Managing owners/ Operators of:<br>M/V: KAVO PLANTANOS<br>and:<br>O.W. BUNKERS (UK) LTD<br>PILGRIM HOUSE, FIRST FLOOR<br>WILLIAM STREET, WINDSOR,, SL4 1BA<br>U.K.  VAT #727445031 | | INVOICE | 31-OCT-2014 | V 242 |
| | | AEGEAN MARINE PETROLEUM S.A.<br>36 Byron Avenue<br>Nicosia Tower Center<br>6th Floor/Office 601<br>1506 Nicosia, Cyprus<br><br>Tax Identification Code (TIC): 18001995S<br>VAT Registration Number: 900025971 | | |

| REF. No. | VESSEL | PORT | DELIVERY DATE | CREDIT TERMS | DUE DATE |
|---|---|---|---|---|---|
| 10141564/ | KAVO PLANTANOS | VANCOUVER | 22-OCT-2014 | 30 | 21-NOV-2014 |

| DESCRIPTION | UNIT | QUANTITY | UNIT PRICE | AMOUNT IN USD | RATE | AMOUNT |
|---|---|---|---|---|---|---|
| IFO 380 CST | MT | 900.000 | 504.500 | 454,050.00 | | |
| | | | | 0.00 | | |
| | | | | 0.00 | | |
| BARGING FEE | | | | 9,000.00 | | |

T/T REMITTANCE MUST BE FREE OF ALL CHARGES TO:

AEGEAN BALTIC BANK
PIRAEUS BRANCH
93 AKTI MIAOULI, 185 38 PIRAEUS
SWIFT: AEBAGRAA
IBAN: GR46 0560 1020 0000 1051 3650 022 (USD)
BENEFICIARY: AEGEAN MARINE PETROLEUM S.A.
THRU BANK:  DEUTSCHE BANK TRUST, AMERICAS - SWIFT: BKTRUS33
OR : JP MORGAN CHASE BANK, NEW YORK - SWIFT: CHASUS33

| | |
|---|---|
| PAYABLE AMOUNT IN $ | 463,050.00 |
| PAYABLE AMOUNT IN | |