**THE HONORABLE RICHARD A. JONES**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AEGEAN MARINE PETROLEUM S.A., | IN ADMIRALTY |
| Plaintiff, | Case No. 15-CV-00172-RAJ |
| v. | **MOTION TO DISMISS, TRANSFER OR STAY** |
| M/V KAVO PLATANOS, her tackle, boilers, apparel, furniture, engines, appurtenances, etc., | **NOTING DATE: JUNE 5, 2015** |
| and | |
| Certain Bunkers on board the M/V KAVO PLATANOS, | |
| Defendants *in rem*, | |
| and | |
| CANPOTEX SHIPPING SERVICES LTD., *et al*., | |
| Defendants and Garnishee. | |

## I.     INTRODUCTION AND RELIEF REQUESTED

Defendants Canpotex Shipping Services Ltd. ("Canpotex"), Indy Maritime S.A., and Gordomichalis Maritime SA (collectively, "Defendants") are in danger of paying twice for the same *single* delivery of fuel—once to plaintiff Aegean on a maritime lien theory and a second time to ING Bank, successor to the interests of global bunkers broker OW Bunker

MOTION TO DISMISS, TRANSFER OR STAY- 1
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7

Group, under a contract. Defendants therefore ask this Court to provide a simple procedural remedy to a complicated legal dilemma, seemingly one of first impression, in order to prevent exposing Defendants to two lawsuits, two judgments, and two potential payments for a *single* delivery of bunker fuel. Therefore, the Court should dismiss, transfer, or stay this case to avoid inconsistent results and the possibility of improper double exposure.

Canpotex, as charterer of the M/V KAVO PLATANOS, arranged with OW Bunker (U.K.) Ltd., a subsidiary of the global bunkers broker OW Bunker Group, for a bunker fuel delivery to the ship. OW Bunker (U.K.) Ltd. arranged for plaintiff Aegean Marine Petroleum S.A. ("Aegean") to provide the physical fuel delivery. Canpotex would like to see that the bunkers are paid for. To that end, Canpotex has deposited into this Court's registry money sufficient to satisfy the cost of the bunkers and OW's broker's markup.

However, multiple OW Bunker Group entities have filed for bankruptcy in Connecticut. OW Bunker Group has assigned its interest in OW Bunker (U.K.) Ltd.'s outstanding contracts to ING Bank, and ING Bank is collecting sums allegedly owed to OW Bunker from vessel operators and charterers such as Canpotex for contracted bunker sales. And physical fuel suppliers such as Aegean have asserted lien claims arising from those same bunker sales. But despite this Court's order requiring all parties with claims arising from the relevant fuel delivery to appear, OW/ING Bank[1] has refused to appear and represent its interests in this proceeding. Because OW/ING Bank has chosen not to appear before this Court, Defendants face the all-too-real possibility that they may be required to pay for a single fuel delivery two times: (1) $463,050 to Aegean under its various maritime lien and attachment theories and (2) $466,650 (Aegean's invoice plus OW's broker's fee) to OW/ING Bank, on contract theories.

---

[1] Because OW Bunker (U.K.) Ltd. has assigned its rights to collect under outstanding contracts to ING Bank, as discussed below, Defendants will refer to "OW/ING Bank" for convenience.

MOTION TO DISMISS, TRANSFER OR STAY- 2
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7

1 | This Court should prevent the "substantial risk"[2] that Defendants "incur double,
2 | multiple, or otherwise inconsistent obligations"[3] in any one of three ways:

(1) dismiss this matter due to Aegean's failure and inability to join OW/ING Bank, an indispensable party under CR 19;

(2) transfer this matter to the consolidated docket for the numerous related and essentially identical actions, all tied to local bunkers deliveries brokered by Denmark's now-bankrupt bunkers broker OW Bunker, currently before Judge Caproni in the United States District Court for the Southern District of New York; or,

(3) stay this matter pending further developments and clarifications from the numerous related actions in the United States District Court for the Southern District of New York and the OW bankruptcy proceeding in the United States Bankruptcy Court in Connecticut.

## II. FACTS

### A. Canpotex purchased bunkers supplied by Aegean under a contract with OW Bunker (U.K.) Ltd.

Canpotex Shipping Services Ltd. chartered the M/V KAVO PLATANOS from Indy Maritime SA, the Vessel's owner, for cargo service.[4] On October 17, 2014, Canpotex arranged with OW Bunker (U.K.) Ltd. to have approximately 900 metric tons of bunker fuel delivered to the KAVO PLATANOS at Vancouver, British Columbia. OW's Sales Order Confirmation is attached as Exhibit A to the Declaration of David R. Boyajian, filed herewith. OW Bunker contracted with plaintiff Aegean Marine Petroleum S.A. to provide that fuel to the Vessel.

---

[2] FED. R. CIV. P. 19(a)(1)(B)(ii).
[3] *Id.*
[4] Defendant Gordomichalis Maritime SA was the Vessel's manager at the time.

MOTION TO DISMISS, TRANSFER OR STAY- 3
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7

OW Bunker held itself out to be a leading global independent marine fuel (bunker) company with operations in 29 countries, acting as a physical distributor and reseller of marine fuel.  It operated a fleet of around 30 bunker vessels and provided risk management solutions to control costs and protect against market fluctuations.  According to OW's receiver, OW Bunker was the second largest listed company in Denmark in 2013, with annual revenue of $17 billion.[5]  The Aegean Marine Petroleum Network, according to Aegean's own marketing materials, "is the largest independent physical supplier in the world" of marine petroleum products.[6]

Pursuant to the OW-Aegean agreement, Aegean delivered approximately 900 metric tons of bunker fuels to the Vessel at the port of Vancouver, B.C. on October 22, 2014.  The bunker delivery receipt attached as Exhibit 2 to Aegean's complaint confirms same.  Aegean then issued its invoice No. V242 to the bunkers broker, OW Bunker, on October 31, 2014, for $463,050—$454,050 plus a $9,000 charge for barging.  That invoice is attached to Aegean's Complaint as Exhibit 3.

OW Bunker, in turn, issued Invoice No. 24-30922 to Canpotex Shipping Services Ltd. for $466,650, presumably Aegean's delivery price (including barging) plus a $3,600 broker's fee.  OW Bunker's Invoice No. 24-30922 is attached as Exhibit B to the Boyajian Dec.  (Canpotex has used this greater amount invoiced from OW Bunker to calculate the amount it has deposited into this Court's registry—$494.013.00 (*i.e.*, $466,050 plus accrued interest at 6%).)[7]

---

[5] *See* pwc's O.W. Bunker & Trading A/S Notice Page, www.pwc.co.uk/business-recovery/administrations/owbunker.jhtml (last visited May 7, 2015).

[6] *See* Aegean's Main Web Page, www.ampni.com (last visited May 7, 2015).

[7] Canpotex has discovered that it based the calculation of the amount deposited off the erroneous number $466,050 as opposed to the invoiced amount of $466,650.  Canpotex is willing to deposit an additional $636.00 to cover that amount plus 6% interest.

MOTION TO DISMISS, TRANSFER OR STAY- 4
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7

**B.      The global OW Bunker Group collapsed into insolvency.**

Shortly after Canpotex received the OW Bunker invoice, and before Canpotex paid it, Aegean sent an undated "Notice to Pay" to "the owners and operators of the M/V KAVO PLATANOS" stating as follows:

> We are the physical suppliers of the [900 metric tons of fuel oil delivered at Vancouver] to your vessel. . .
>
> The supply was arranged by OW Bunker Group, who as you probably know have collapsed and filed for insolvency and restructuring. . .
>
> With the collapse of OW Bunker we hereby call on you to pay the sum of US$454,050 by return to our bank account. . .
>
> In the unlikely event that OW pays for the supply, we shall notify you immediately. Any funds you have paid to us will be returned to you.
>
> \* \* \* \* \*
>
> We regret this situation, and we hope you will understand the need for us to request direct payment. . .

Aegean's Notice to Pay is attached as Exhibit C to the Boyajian Dec. Aegean's Notice to Pay went on to threaten legal action against the ship if the ship operator failed to pay Aegean rather than OW Bunker. Aegean's Notice to Pay requested that payment be made via "JP Morgan Chase Bank, New York" and provides account routing details. *Id*. According to Aegean's website, Aegean has an office at 299 Park Avenue, 2nd Floor, New York, NY, USA 10171.[8] Aegean's Notice to Pay correctly cited the financial collapse of OW Bunker, which filed Chapter 11 reorganization (Bankruptcy Petition #14-51720) on November 13, 2014, in the U.S. Bankruptcy Court in Connecticut. The OW bankruptcy docket is attached as Exhibit D to the Boyajian Dec.

---

[8] *See* Aegean's Web Page: www.ampni.com (follow "Sales Offices" hyperlink) (last visited May 7, 2015).

MOTION TO DISMISS, TRANSFER OR STAY- 5
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7

### C. OW Bunker (U.K.) Ltd. assigned its rights to any and all receivables arising from bunker sales to ING Bank.

On December 19, 2013, the OW Bunker Group entered into an English Omnibus Security Agreement with ING Bank N.V. (ING). Under that agreement, ING acts as agent for a syndicate of lenders to the OW Bunker Group and OW Bunker Group assigned and charged to ING all rights, title, and interest in its third party and intercompany receivables, both current and future. OW Bunker (U.K.) Ltd. (the particular OW entity with which Canpotex and Aegean contracted) is one of the entities that have submitted to the ING Bank security interest. OW's receiver is, accordingly, going out and collecting all of the receivables on behalf of ING Bank; therefore, for the purposes of collecting on outstanding bunker sales debts, ING Bank *is* OW.[9]

Although Aegean's Notice acknowledges the regrettable situation that Defendants find themselves in, Defendants are not alone. Under federal maritime law, Canpotex is contractually obligated to pay or satisfy lien claims asserted against the ship arising from bunkers purchases as charterer of the M/V KAVO PLATANOS. Not surprisingly, with the collapse of a massive, global bunkers brokering network like the OW Group, numerous vessels owners and charterers find themselves in a practically identical position as Canpotex, caught between claims of OW/ING Bank and OW Bunker's various locally contracted suppliers, like Aegean. This has resulted in litigation around the world, including in the United States. In the United States, each and every one of those matters appears to be making its way to a single

---

[9] *See* pwc's O.W. Bunker & Trading A/S Notice Page, www.pwc.co.uk/business-recovery/administrations/owbunker.jhtml (last visited May 7, 2015).

The actual English Omnibus Security Agreement is here: www.pwc.co.uk/assets/pdf/ow_bunkers_charge_19_12_13_registration.pdf (last visited May 7, 2015).

MOTION TO DISMISS, TRANSFER OR STAY- 6
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7

desk at the United States District Court for the Southern District of New York.

### D. Nearly all the related United States actions have been consolidated before a single judge in the United States District Court for the Southern District of New York.

At least nineteen related interpleader and arrest actions filed in the United States have so far been transferred to and consolidated before Judge Valerie E. Caproni in the United States District Court for the Southern District of New York. A list of those actions is attached as Exhibit E to the Boyajian Dec. Among those actions is the M/V BIRCH 6 case, which was initiated as a vessel arrest action in the United States District Court for the Southern District of Louisiana, but was transferred to the United States District Court for the Southern District of New York, and onto Judge Caproni's consolidated docket, with substituted financial security transferred to and posted with the Clerk of the Court in the United States District Court for the Southern District of New York. The Consent Motion to Transfer and the Order granting same are attached as Exhibit F to the Boyajian Dec. Note also that Canpotex is among the Interpleader plaintiffs already before Judge Caproni. Since last November, Judge Caproni has been unravelling the OW Bunker threads that lead to vessels roaming the far reaches of the globe and the far-flung local fuel suppliers who supplied those vessels under contracts with the several OW entities. The Dockets for all nineteen related OW Bunker/local supplier actions are attached as Exhibit G to the Boyajian Dec.

Judge Caproni is sorting out the relative priority of the contract claims by the bankruptcy claimants and the fuel suppliers who assert maritime lien rights against vessels. In fact, counsel for Aegean recently filed a motion for summary judgment with Judge Caproni on behalf of another, similarly situated local fuel supplier. *See* Boyajian Dec, Ex. G, at 1:14-cv-10027-VEC, document 42. Aegean's counsel argues that the claims of fuel suppliers are superior to the claims against the bankruptcy fund

MOTION TO DISMISS, TRANSFER OR STAY- 7
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7

because: (1) there is legal priority of maritime liens over the contract collection claims of ING Bank, and (2) the supplier retains title to the bunker fuel, since OW Bunker never paid the supplier for the fuel delivery. A ruling on that motion should lead to the logical result sought by Canpotex and the other vessel interests, which is to credit against the contract amounts owed OW Bunker the amounts paid to the suppliers/lien claimants in satisfaction of their maritime claims. Judge Caproni has stayed that motion pending further discovery (per bench orders) and some resolution with the Bankruptcy Court in Connecticut over potential consolidation of the various maritime interpleaders and claims before the United States District Court for the Southern District of New York and the OW bankruptcy action before the Bankruptcy Court in Connecticut.[10] There is a May 13, 2015, status conference scheduled before Judge Caproni to address this question as it relates to the consolidated OW Bunker cases.

There is also a pending transfer motion in the United States Bankruptcy Court in Connecticut to transfer the OW Bunker proceedings to the Southern District of New York, in their entirety. Ex. D, docket entry #229. This transfer motion now appears somewhat closer to resolution. There is a hearing scheduled for May 27, 2015, on the motion to transfer to the United States District Court for the Southern District of New York and the related consent agreements. Ex. D, docket entry dated 4/29/2015. Regardless, Aegean has a presence in Connecticut—Aegean has another office at 22 Thorndale Circle, 3rd Floor, Darien, CT, USA 06820.[11] Aegean, then, has offices in *both* New York City and Connecticut, but no presence in the Pacific Northwest. The only thing anchoring this matter in this forum is the substitute

---

[10] ING Bank is OW's receiver and, as such, would be the entity likely to attempt to collect on the OW contract debts.

[11] *See* Aegean's Web Page: www.ampni.com (follow "Sales Offices" hyperlink) (last visited May 7, 2015).

MOTION TO DISMISS, TRANSFER OR STAY- 8
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7

*res*—the funds sitting in this Court's registry. Those funds can be easily transferred, and Defendants stand ready to execute any instructions regarding how the Court would like to see this accomplished.

Canpotex wants to pay for the fuel it purchased. That intention is confirmed by Canpotex filing an interpleader action in the United States District Court for the Southern District of New York in which it has asked that Court to allocate funds for fuel purchases to the appropriate parties. *See* Exhibits E & G to the Boyajian Dec., at *Canpotex Shipping Services Ltd., et al. v. O.W. Bunker (U.K.) Ltd. et al.*, 1:15-cv-01351-VEC. But Canpotex wants to only pay *once* for the fuel it purchased for the ship.

This Court should dismiss, transfer, or stay this case.

### III.   EVIDENCE RELIED UPON

1. The Declaration of David R. Boyajian and the Exhibits attached thereto; and,
2. Court records and files therein.

### IV.   ISSUES PRESENTED

As noted above, this Court should prevent the substantial risk that Defendants incur double, multiple, or otherwise inconsistent obligations arising from competing contract and maritime liens claims related to the same single bunkers delivery in any one of three ways:

(1) dismiss this matter due to Aegean's failure and inability to join OW/ING Bank, an indispensable party under CR 19;

(2) transfer this matter to the consolidated docket for the numerous related and essentially identical actions, all tied to local bunkers deliveries brokered by the OW Bunker Group, currently consolidated before Judge Valerie E. Caproni in the United States District Court for the Southern District of New York; or,

(3) stay this matter pending further developments and clarifications from the numerous related maritime actions in the United States District Court for the Southern District of New York and the OW bankruptcy proceeding in the United States Bankruptcy

MOTION TO DISMISS, TRANSFER OR STAY- 9
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7

Court in Connecticut.

## V. ARGUMENT AND AUTHORITY

Unfortunately, this Court cannot allocate the deposited funds between Aegean and OW Bunker *without* an appearance on behalf of the OW/ING Bank. Without OW/ING Bank's appearance, this Court cannot allocate the deposited funds without exposing Defendants to the risk of paying nearly a half million dollars twice. However, the Connecticut bankruptcy court is working with the United States District Court for the Southern District of New York to see that the parties wind up in a forum that can reach a wholesale equitable solution that will, we expect, protect innocent victims such as Canpotex. OW's interests are obviously represented in the Connecticut bankruptcy proceeding. And OW Bunker entities are making appearances in the United States District Court for the Southern District of New York. So far, both OW USA and OW North America have waived service and appeared in all of the United States District Court for the Southern District of New York cases they are involved in, as has OW Germany. Regardless, based upon the agreement between OW Bunker (UK) Ltd. and ING Bank, it does not matter what OW entities appear in the United States District Court for the Southern District of New York because ING Bank has appeared and is effectively playing its hand in the United States District Court for the Southern District of New York and the OW Bunker Group has assigned all its rights to ING Bank.

The critical issue on the claim before this Court is identical to that before Judge Caproni in nineteen (and likely growing) virtually identical matters: How can vessel interests see that both OW/ING Bank and the local supplier get paid what they are owed for the fuel deliveries without the vessel interests having to pay roughly the same amount twice, once to OW/ING Bank in contract and once to the suppliers on a maritime lien theory. To that end, Canpotex has deposited $494.013.00 into this Court's registry. This represents an amount sufficient to cover the OW Bunker invoice, including OW's markup.

MOTION TO DISMISS, TRANSFER OR STAY- 10
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7

**A. Maritime precedent prevents double obligations for Defendants caught at the intersection of competing maritime lien and contract claims arising from the same service.**

Courts recognize and protect those who risk facing double exposure from liens of sub-contracted marine service providers. For example, a carrier has a general right to assert a possessory lien against cargo for unpaid freight. *E.g.*, *Osaka Shosen Kaisha v. Pacific Lumber Export Co.*, 260 U.S. 490 (1923); *Beverly Hills National Bank and Trust Co. v. Compania de Navegacione Almirante, S/A*, 437 F.2d 301 (9th Cir. 1971) (same). But what happens when a cargo shipper pays freight to a transportation intermediary, such as a vessel charterer or a non-vessel-owning common carrier (NVOCC), but that intermediary fails to pay the shipowner performing the ocean carriage?

Normally, an unpaid shipowner cannot assert a lien against a third party who has paid freight to a charterer or NVOCC. *The Bird of Paradise*, 72 U.S. 545 (1867); *Goodpasture, Inc. v. M/V POLLUX*, 602 F.2d 84 (S.D.N.Y. 1979); *Berdex Int'l, Inc. v. M/V KAPITAN GRISHIN*, 1992 AMC 1096 (N.D. Ca. 1992) (ocean carrier has no lien against cargo for freight not paid by NVOCC where cargo owner had paid freights due to the NVOCC before the cargo owner received notice of the lien from ocean carrier). No lien for subfreights arises for unpaid charter hire unless the shipowner gave actual notice of the lien before the cargo owner paid the subfreights to the intermediary. *Prozina Shipping Co., Ltd. v. Thirty-four Automobiles*, 179 F.R.D. 41, 1991 AMC 1329 (D. Mass. 1991).

If, on the other hand, the ocean carrier gives notice to the cargo owner *before* the cargo owner pays the delinquent charterer/freight broker, the carrier can demand direct payment from the third-party cargo owner, enforceable by a lien against the cargo. *Hornbeck Offshore Operators, Inc. v. Ferromet Resources, Inc.*, 849 F.Supp. 434 (E.D. Va. 1994); *St. John Marine Co. v. United States*, 1994 AMC 2526

MOTION TO DISMISS, TRANSFER OR STAY- 11
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

(S.D.N.Y. 1994) (enforcing a lien against a sub-charterer that had ignored notice of a lien and paid subfreights to the charterer). "A review of the jurisprudence suggests, in essence, this broad equitable premise: The shipowner has a maritime lien for charter hire on cargo . . . *except* as against a good faith purchaser of the cargo who had paid for it in advance without notice of the shipowner's rights." *Toro Shipping Corp. v. Bacon-McMillan Veneer Mfg. Co.*, 1966 AMC 2290 (5th Cir. 1966).

The Fifth Circuit in *Goodpasture* could easily have been discussing the case before this Court when it said: "[T]he facts of this unfortunate case present a maritime version of the eternal triangle, one in which the difficulties arising between each of the three (or perhaps four or five) actors transcend their relationship to bedevil the others." *Goodpasture*, 602 F.2d at 84. The problem before this Court is that Canpotex received notice (including, *inter alia*, the Notice to Pay from Aegean) that OW had not paid ***and would not pay*** Aegean ***before*** Canpotex paid OW Bunker. This Court should affect a procedural solution that will allow Canpotex to be treated like all other similarly situated victims of the OW Bunker bankruptcy. Accordingly, Defendants seek three alternative solutions, as discussed further below.

### B. The Court should dismiss this case because OW/ING Bank, a necessary party, has not been joined.

Despite this Court's February 20, 2015, Order, OW/ING Bank has not appeared in this lawsuit. Order attached as Exhibit H.[12] In OW/ING Bank's absence, this Court is unable to resolve this matter without exposing Defendants "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations . . ." FED. R. CIV. P. 19(a)(1)(B)(ii). OW/ING Bank is therefore an absent but indispensable and necessary party whose presence

---

[12] OW Bunker was served in accord with this Court's Order and at other known and related pwc email addresses. The other related email addresses are those for the other listed receivers for OW Bunker (UK) Ltd. Those Proofs of Service are attached as Exhibit I to the Boyajian Dec.

MOTION TO DISMISS, TRANSFER OR STAY- 12
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

is required by FRCP 19, but Aegean failed to include OW Bunker or ING Bank as a party defendant.

"Where a party required under Rule 19 has not been joined, a party may move for dismissal under Rule 12(b)(7)." *Cabrera-Morales v. UBS Trust Co.*, 769 F. Supp. 2d 67, 70 (D.P.R. 2011). In *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18 (1st Cir. 2010), the First Circuit explained the purpose of Rule 19 and provided instruction on how to apply the Rule:

> Parties should be joined, when feasible, if they are "necessary" to the action according to the criteria laid out in Rule 19(a). If a necessary party cannot be joined in the action . . . Rule 19(b) lays out additional criteria for determining whether the party is "indispensable." If the court finds that party is anything less than indispensable, the case proceeds without her. If, on the other hand, the court finds that the litigation cannot proceed in the party's absence, the court must dismiss the case.

*Id.* at 25 (internal citation omitted). The *Jimenez* Court expanded upon the meaning of "necessary" under Rule 19:

> The term "necessary" is a vestige of a superseded version of Rule 19 and no longer appears in the text. . . . Lest there be any confusion, the word is used as a term of art and signifies desirability rather than actual necessity. Parties are not truly necessary in the vernacular sense of the word unless and until they satisfy the terms of Rule 19(b).

*Id.* at 25 n.3 (internal punctuation omitted). The term "indispensable" has similarly been removed from the text of Rule 19, but courts still use it as shorthand for whether dismissal under Rule 19(b) is warranted. The "critical question" under Rule 19(b)—and thus the key to whether a party is "indispensable"—is "'*whether in equity and good conscience*' the action may proceed in [the party's] absence." *B. Fernandez & Hnos, Inc. v. Kellogg USA, Inc.*, 516 F.3d 18, 23 (1st Cir. 2008) (emphasis added) (quoting FED. R. CIV. P. 19(b)).

Rule 19(b) provides four non-exhaustive factors for the trial court to consider in

MOTION TO DISMISS, TRANSFER OR STAY- 13
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7

determining whether a party is indispensable:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

FED. R. CIV. P. 19(b). "Rule 19(b) determinations must be based on fact-specific considerations," and "must be steeped in 'pragmatic considerations.'" *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 635 (1st Cir. 1989) (quoting Advisory Committee Notes on the 1966 Amendments to Rule 19).

### 1. The four Rule 19(b) factors

#### a. Prejudice

The first CR 19(b) factor is the extent to which a judgment rendered without OW/ING Bank might prejudice an existing party or OW/ING Bank. FED. R. CIV. P. 19(b)(1). If this lawsuit is allowed to proceed without OW/ING Bank, Defendants are still at risk of a subsequent claim by OW/ING Bank based on the Canpotex-OW Bunker contract, seeking payment for the exact same delivery of fuel. Exposure to double liability for a single purchase is the clearest type of prejudice, and is specifically recognized in CR 19(a).

The prejudice to Aegean from a dismissal, on the other hand, is negligible. The only jurisdictional hook that brought this case before this Court was the presence of the *res*, the M/V KAVO PLATANOS, within this district. The substitute *res* that was deposited with this Court, however, is far more mobile. This Court could easily dismiss this action and transfer the substitute *res* to the United States District Court for the Southern District of New York's Registry. OW/ING Bank has appeared and is appearing in numerous related actions

MOTION TO DISMISS, TRANSFER OR STAY- 14
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7

in the United States District Court for the Southern District of New York. Aegean requested that Defendants send payment to a bank in New York. *See* Exhibit C. Aegean has offices in New York. Judge Caproni is adjudicating at least nineteen substantially identical actions in the United States District Court for the Southern District of New York. A dismissal of this action and a transfer of the substitute funds imposes a minimal burden on Aegean and aligns the risk to Defendants of double liability with those seeking resolution of the same issue before Judge Caproni. It also, obviously, provides for more efficient use of judicial resources—the United States District Court for the Southern District of New York is already examining the very issues at play here. The facts in this case and pragmatic considerations favor dismissal.

b. Protective provisions

Defendants cannot envision protective provisions—beyond the notice to appear included in this Court's February 20 Order—that might eliminate exposure to potentially double liability. The Court's Order directing OW/ING Bank to appear, in this case, has not been complied with. Canpotex has sought to protect its interests by affirmatively seeking interpleader relief before Judge Caproni related to OW Bunker sales to other vessels. These factors therefore weigh in favor of dismissal.

c. Adequacy of judgment in OW Bunker's absence

A judgment in this Court would be fully adequate only as between Defendants and Aegean. But it would leave Defendants *entirely* at risk of subsequent claims by OW/ING Bank to recover for the same delivery under the Canpotex-OW Bunker fuel delivery/broker contract. This factor, therefore, also weighs in favor of dismissal.

d. Adequacy of remedy if action dismissed

Aegean's filing in this jurisdiction was based solely on the temporary presence of the M/V KAVO PLATANOS within the district. But the physical presence of the Vessel no longer anchors this action to this forum. Substitute security has been deposited with this

MOTION TO DISMISS, TRANSFER OR STAY- 15
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7

Court in an amount sufficient to satisfy both Aegean's *and* OW/ING Bank's claims, if both can be made parties to a single lawsuit. That appears to be an impossibility here—OW/ING Bank is protected by the bankruptcy stay and has ignored this Court's prior order to appear voluntarily. However, both parties are present in New York. The *res* can be transferred to New York. The parties to this action could follow that *res*. Moreover, the S.D.N.Y. is already working with the United States Bankruptcy Court in Connecticut to create a single forum in which to resolve all the related claims. There is, therefore, a perfectly adequate remedy available in the S.D.N.Y. The availability of an adequate forum in another District Court that can resolve all related and competing claims weighs heavily in favor of dismissal.

### C. In the alternative, the Court should transfer this case to a forum that can address all claims.

If this Court were not inclined to dismiss this action and encourage Aegean to refile in a forum able to dispose of the competing claims to this single substitute *res*, then the Court should transfer this action in its entirety to the United States District Court for the Southern District of New York. A district court has broad discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) (internal citations omitted)).

In order for a district court to transfer an action under 28 U.S. Code § 1404, it must make the following two findings: (1) the transferee court is one where the action "might have been brought," and (2) the convenience of the parties and witnesses and the interest of justice favor transfer. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). To determine whether the moving party has met its burden under the second prong, courts consider the following factors: (1) non-moving party's choice of forum; convenience of the parties and witnesses; (2) ease of access to sources of proof; (3) local interest in the controversy; (4) familiarity of each forum with the applicable law; and (5) relative

MOTION TO DISMISS, TRANSFER OR STAY- 16
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7

congestion in each forum. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Each of these factors weighs in favor of transfer.

Aegean's choice of forum was initially dictated only by the temporary presence of the M/V KAVO PLATANOS within the district. But an action against the substitute *res*, which stands in the Vessel's place, can be prosecuted wherever the funds are deposited. As against deposited funds, this particular forum provides no particular benefit, and this action could have been initiated anywhere. As for the parties' convenience, neither Aegean nor Defendants have offices in Washington. But Aegean does have an office in New York (and another in Connecticut), and Canpotex has related interpleader actions pending before the S.D.N.Y. OW/ING Bank has similarly appeared in related action pending before the S.D.N.Y. There are no witnesses or evidence located in Washington to the underlying transactions. Ease of access to proof and the familiarity of the forum with the relevant (and complicated) law weigh most heavily in favor of transfer. New York is a major center of maritime commercial and legal activity, and the United States District Court for the Southern District of New York is a preeminent forum for resolution of maritime law disputes.[13] As indicated by the number of interpleader and claim actions filed in or transferred to the United States District Court for the Southern District of New York, New York has high interest in this controversy. Relative congestion of court dockets in each forum would not seem to be a factor given the special attention that these consolidated cases are receiving.

This case involves the intersection of marine operations carried out on a global scale and the bankruptcy of a multinational petroleum supplier. It appears to be an issue of first

---

[13] *See* JUDGE HAIGHT ON THE 225 YEAR HISTORY OF ADMIRALTY PRACTICE IN THE SDNY: An address by the Honorable Charles S. Haight, Jr., Senior United States District Judge of the United States District Court for the Southern District of New York on the 225th Anniversary of the Court: www.americanmaritimecases.com/assets/SDNY/JUDGE-HAIGHT.pdf.

MOTION TO DISMISS, TRANSFER OR STAY- 17
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7

impression as to bunkers brokers, although the cases addressing a carrier's lien on freights make it clear that courts sitting in admiralty protect innocent maritime actors from paying twice on lien and contract claims for the same service. The United States District Court for the Southern District of New York has consolidated its cases in the interest of even-handed resolution and judicial economy. This case ought to join them.

**D. In the alternative, this Court should stay this matter while the other, likely dispositive pending matters are resolved.**

If this Court were to believe that dismissal or transfer are not warranted, then the Court should stay this proceeding pending further developments in both the United States District Court for the Southern District of New York and the Bankruptcy Court in Connecticut. As noted above, Judge Caproni has nineteen nearly identical actions before her, all related to fuel sales brokered by OW entities. Also before that court is a motion for summary judgment, filed by Aegean's counsel, asking for a determination of the relative priority of the bankruptcy debtors as against maritime liens claimants like Aegean. The parties in all nineteen related actions are to appear for a general status conference on May 13, 2015, to address this issue and others. A ruling will hopefully be made following the May 27, 2015, hearing in the Bankruptcy Court on the motion to transfer that action to the United States District Court for the Southern District of New York and the related consent agreements. Eventually, those two courts will sort out the relationships between the several actions, the several claimants, and the priorities of the several claims to the same money owed for the individual fuel deliveries. If this Court were not inclined to see this action be part of that wholesale resolution, then Defendants ask that this Court stay the current matter pending further developments in the pending matters.

/ / /

/ / /

MOTION TO DISMISS, TRANSFER OR STAY- 18
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7

1  Dated this 11th day of May, 2015.

2                    SCHWABE, WILLIAMSON & WYATT, P.C.

3

4                    By: *s/ David R. Boyajian*
                         David R. Boyajian, OSB No. 112582, *pro hac vice*
                         1211 SW Fifth Avenue, Suite 1900
5                        Portland, OR  97204
                         Telephone:  503-222-9981
6                        *Counsel for Specially Appearing Defendants
                         Canpotex Shipping Services Ltd., Indy Maritime
7                        S.A., and Gordomichalis Maritime SA*

MOTION TO DISMISS, TRANSFER OR STAY- 19
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7

# CERTIFICATE OF SERVICE

I declare under penalty of perjury of the law of Washington State and that on May 11, 2015, I electronically filed this document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

J. Stephen Simms - jssimms@simmsshowers.com

Christopher W. Nicoll - cnicoll@nicollblack.com

Jeremy Jones - jjones@nicollblack.com

By: *s/ David R. Boyajian*

CERTIFICATE OF SERVICE - 1
(CASE NO. 15-CV-00172-RAJ)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128229\201590\DSL\15784618.7