THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE

| | |
|---|---|
| AEGEAN MARINE PETROLEUM S. A., <br><br> Plaintiff, <br><br> v. <br><br> CANPOTEX SHIPPING SERVICES LTD. et al., <br><br> Defendants. | IN ADMIRALTY <br><br> CASE NO.: 2:15-cv-00172-RAJ <br><br> ORDER |

## I. INTRODUCTION

This matter comes before the court on the motion of defendants Canpotex Shipping Services, Ltd. ("Canpotex"), Indy Maritime S.A. ("Indy"), and Gordomichalis Maritime S.A. ("GM") (collectively "defendants") to dismiss, transfer or stay this action. Dkt. # 34.

Also before the court is plaintiff Aegean Marine Petroleum S.A.'s ("Aegean") motion for leave to file response to additional authorities. Dkt. # 49. The court GRANTS Aegean's motion. The court has reviewed all of the supplemental authority filed on the docket (Dkt. ## 47, 48, 49-1, 50, 51, 52 and 53) and finds that it is both relevant and helpful.

As set forth below, the court finds that staying this matter pending further

developments in numerous similar actions pending in the Southern District of New York will conserve the parties' and the court's resources and avoid the risk of inconsistent judgments.

## II.     BACKRGOUND

In 2014, defendant Canpotex chartered a vessel, the M/V KAVO PLATANOS, from Indy, the vessel's owner. On October 17, 2014, Canpotex arranged with OW Bunker (U.K.) Ltd. ("OW Bunker") to have approximately 900 metric tons of bunker fuel delivered to the vessel at Vancouver, British Columbia. OW Bunker then contracted with plaintiff Aegean to provide that fuel to the vessel.

On October 22, 2014, Aegean delivered the fuel to the vessel. On October 31, 2014, Aegean issued an invoice to OW Bunker for $463,050. OW Bunker, in turn, issued an invoice to Canpotex for $466,650 (presumably including a mark up for the broker fee).

Shortly after Canpotex received the OW Bunker invoice, but before Canpotex paid it, Aegean sent Canpotex a "Notice to Pay" that stated:

> We are the physical suppliers of the [900 metric tons of fuel oil delivered at Vancouver] to your vessel. . .
>
> The supply was arranged by OW Bunker Group, who as you probably know have collapsed and filed for insolvency and restructuring. . .
>
> With the collapse of OW Bunker we hereby call on you to pay the sum of US$454,050 by return to our bank account. . .
>
> In the unlikely event that OW pays for the supply, we shall notify you immediately. Any funds you have paid to us will be returned to you.
>
> * * * * *

> We regret this situation, and we hope you will understand the need for us to request direct payment. . .

Aegean's Notice to Pay correctly cited the financial collapse of OW Bunker, which filed for Chapter 11 reorganization (Bankruptcy Petition #14-51720) on November 13, 2014, in the U.S. Bankruptcy Court in Connecticut.

The Second Circuit recently acknowledged that the bankruptcy of OW Bunker and its multi-national related entities has caused "a litigation frenzy." At least 25 interpleader actions are currently pending in the United States District Court for the Southern District of New York concerning similar issues among overlapping parties.[1] In each of these actions, the entities that physically delivered the fuel to the vessels (like Aegean) are seeking to collect based on an *in rem* maritime lien theory, while the bankrupt OW Bunker entities maintain that those same amounts belong to the bankruptcy estate based on an *in personam* contract theory.[2] While most of these actions are pending before Judge Valerie Caproni, some are pending before other judges within the Southern District of New York (Case Nos. 14-cv-9447-KBF; 15-cv-2992-SAS) and at least one related action has been stayed in the Central District of California (Case No. 14-cv-9662-AB).

A few months after the OW entities filed for bankruptcy, on February 6, 2015, Aegean filed a complaint in this court seeking an emergency order arresting the M/V KAVO PLATANOS while it was located in this district. Dkt. # 1. The court granted Aegean's request and the U.S. Marshal arrested the vessel on February 11, 2015. Dkt. # 13. The parties later stipulated to a release of the vessel upon Canpotex's

---

[1] *See Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC et al.*, 2016 WL 731776, at *1 (2d Cir. Feb. 24, 2016).
[2] *Id.* at *2-3.

deposit of $494,013 ($466,050 plus accrued interest at 6%) into the court's registry. Dkt. # 20.

At that time, neither party had advised the court of any related cases. *See* (Civil Case Cover Sheet) Dkt. # 1-1. Nor does it appear that defendants sought to file an interpleader in New York prior to the commencement of this suit.

### III. ANALYSIS

#### a. Rule 19 Dismissal

Defendants initially moved to dismiss this matter under Rule 19 for failure to join an indispensible party. *See* Fed. R. Civ. P. 19. According to defendants, OW Bunker assigned and charged ING Bank ("ING") with all rights title and interest in its third party and intercompany receivables and, therefore, the court could not grant complete relief without joining ING. ING has since appeared in this matter. Dkt. # 42. Accordingly, defendants' motion to dismiss on this basis is moot.

#### b. Motion to Transfer

Defendants alternatively moved to transfer this matter to the Southern District of New York. Under 28 U.S.C. §1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. §1404(a); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1998).

Aegean refuses to consent to a transfer. Thus, to establish that the proposed transferee court is a "district or division where [the case] *might have been brought*," defendants must show that the Southern District of New York would have had both subject matter and personal jurisdiction. *See Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1108 n. 39 (C.D. Cal. 2007) (citing *A.J. Indus. Inc. v. U.S. Dist. Court*, 503 F.2d 384, 386-88 (9th Cir. 1974) ("To effect a transfer, the transferee

court must have subject matter jurisdiction and be a proper venue for the action. Additionally, defendants must be subject to personal jurisdiction and amenable to service of process there.")).

Here, the parties have failed to adequately brief the first factor under Section 1404. Although Judge Caproni addressed this issue, in part, with respect to subject matter jurisdiction under the interpleader statute (*see, e.g.*, *UPT Pool Ltd. v. Dynamic Oil Trading (Singapore) PTE. Ltd.*, 2015 WL 4005527, at *7-9 (S.D.N.Y. July 21, 2015), she expressly acknowledged that personal jurisdiction remained an open question. *Id.* at *10 ("The Court's findings as stated herein are limited solely to its inquiry regarding subject matter jurisdiction and shall not be construed to address any other argument or defense raised in respect of these cases, including, *inter alia*, as to venue and personal jurisdiction."). Further, with respect to the matters currently pending before Judge Caproni, the Second Circuit found that the issue of personal jurisdiction had been waived on appeal. *See Hapag-Lloyd*, 2016 WL 731776, at *6.

In the present case, defendants have failed to establish that this action "might have been brought" in the Southern District of New York. There is no evidence that defendants attempted to file an interpleader action in New York prior to the commencement of this suit; defendants have failed to make an adequate showing regarding personal jurisdiction; and defendants have failed to make an adequate showing regarding venue.[3]

Accordingly, defendants' motion to transfer under 28 U.S.C. § 1404 is denied.

---

[3] Although defendants contend that a number of similar matters have been transferred to Judge Caproni's docket, they fail to cite any that are comparable to the instant case. For example, in *Chemoil Latin America, Inc. v. M/V Birch 6*, Case No. 14-cv-2702 (E.D. La.), the parties consented to the transfer and consented to jurisdiction. That is not the case here.

  c. <u>Motion to Stay</u>

Finally, defendants moves to stay this action pending further developments in the multiple interpleader actions pending in New York. For the reasons set forth below, the court finds that a stay is the most prudent course of action.

A district court has discretionary power to stay proceedings in its own court. *Landis v. N.A. Co.*, 299 U.S. 248, 254–255 (1936); *see also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). When considering a motion to stay, the district court weighs three factors: (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

The issues that are central to this case overlap significantly with the multiple cases pending in the Southern District of New York. For example, Aegean claims that it has an absolute right to the amounts Canpotex deposited with the court based upon an *in rem* maritime lien. (Opp.) Dkt. # 41, pp. 4-5. ING, of course (as assignee of OW Bunker), has filed a statement of interest expressly reserving its *in personam* claim to that same money. *See* Dkt. # 42, ¶ 21 ("Nothing herein is intended to prejudice ING Bank's rights to proceed on its *in personam* claim."). Canpotex, as the putative vessel owner, concedes that it owes someone approximately half a million dollars for the fuel it received, but it does not want to pay this amount twice (*i.e.*, once to Aegean and once to ING).

These arguments are substantially similar to the arguments these same parties (and similarly situated parties) are making in New York.  *See, e.g.*, *Aegean Bunkering USA LLC v. M/T Amazon et al.*, Case No. 14-cv-997-KBF; *Canpotex Shipping Servs. Ltd. v. O.W. Bunkers (UK) Ltd. et al.*, Case No. 15-cv-1351-VEC.  Indeed, as the Second Circuit recently opined, the entitlements arising from the maritime liens and the interlocking contracts (among the vessel owner, the O.W. entity supplying the fuel, and the entity that physically delivered the fuel) are inextricable.  *See Hapag-Lloyd*, 2016 WL 731776, at *3 n.17.

Although no court appears to have made any substantive determinations regarding the payment obligations among these parties (including possible subrogation or setoff rights), the cases in the Southern District of New York are farther along and the judges presiding over those cases are more deeply immersed in these issues.

Aegean will, of course, suffer some harm as a result of the stay (in the form of delay), but the court finds that the harm is minimal and outweighed by the anticipated simplification of the issues, the conservation of the parties' and the court's resources, and the need to avoid the risk of inconsistent judgments.  A stay will also serve the interests of justice by avoiding the risk that defendants will face double exposure on a single cause of action, avoiding piecemeal resolution of the issues and avoiding the time and expense associated with litigating substantially identical issues in two different forums.

Accordingly, as set forth more fully below, defendants' motion to stay is granted.

### IV.   CONCLUSION

For all the foregoing reasons, Aegean's motion for leave to file response to additional authorities is GRANTED.  Dkt. # 49.  Defendants' motion to dismiss,

transfer or stay is GRANTED IN PART AND DENIED IN PART.  Dkt. # 34.  This matter will be stayed and removed from the court's active caseload until further order of the court.  The parties shall file a status report in 90 days that updates the court on any relevant developments in any related case pending in the Southern District of New York.  Should there be any significant developments prior to the expiration of 90 days, the parties are permitted to file a motion to lift the stay on that basis.  The clerk is directed to administratively close this case.

      Dated this 9th day of March, 2016.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court