UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AEGEAN MARITIME PETROLEUM S.A., | CASE NO. 2:15-cv-00172-JHC |
| Plaintiff, | ORDER |
| v. | |
| KAVO PLATANOS M/V, ET AL., | |
| Defendants. | |

# I

## INTRODUCTION

This matter comes before the Court on Defendant Canpotex Shipping Services, Ltd.'s Motion to Vacate Order on Motion to Arrest Vessel.[1] Dkt. # 111; *see also* Dkt. # 9. The Court has considered: the materials filed in support of, and in opposition to, the motion; pertinent portions of the record, and the applicable law. Being fully advised—and after holding a hearing under Supplemental Admiralty Rule ("SAR") E 4(f)—the Court DENIES the motion.

---

[1] Canpotex moves on behalf of all defendants. Dkt. # 111 at 1.

ORDER - 1

## II

## BACKGROUND

In 2014, Defendant Canpotex chartered a vessel, the M/V KAVO PLATANOS ("Vessel"). Dkt. # 82 at 3. In October 2014, Canpotex contracted with O.W. Bunkers (U.K.), Ltd. ("OW") to have 900 metric tons of bunker fuel delivered to the Vessel in Vancouver, Canada. Dkt. # 79-1. OW then contracted with Plaintiff Aegean Maritime Petroleum S.A. ("Aegean") to deliver the bunker fuel to the Vessel. Dkt. # 79-3. When Aegean delivered the fuel, the Vessel's Chief Engineer accepted delivery. Dkt. # 79-4. In November 2014, OW declared bankruptcy. Dkt. # 82 at 3. Aegean sent an invoice to OW for the bunker fuel but never received payment. *Id.* So Aegean then sent Canpotex a Notice to Pay for $463,050, the cost of the bunker fuel delivery. Dkt. # 54. Canpotex did not pay Aegean.

In February 2015, Aegean brought suit against the Vessel *in rem* and *in personam* against Defendants Canpotex, Indy Maritime SA (the owner of the Vessel), and Gourdomichalis Maritime SA (the manager of the Vessel) to recover for the bunker fuel delivery. Dkt. # 1. Soon after Aegean's initial complaint was filed, on February 6, 2015, the Court authorized the arrest and seizure of the Vessel (including all bunkers aboard) and a writ of maritime attachment and garnishment. Dkt. ## 9, 12. Based on the Supplemental Rules for Admiralty Rules B, C, and D ("Supplemental Rule" or "SAR"), the Court determined that the conditions for an action *in rem* were present. Dkt. # 9 at 1. The Court also concluded that a writ of maritime attachment and garnishment was appropriate under Supplemental Rules B, C, and D. Dkt. # 12 at 1. Canpotex then posted $494,013 with this Court as a substitute security to secure release of the Vessel.[2] Dkt. # 21.

---

[2] This amount includes Aegean's original invoice price and interest. Dkt. # 21.

ORDER - 2

In May 2015, Canpotex moved to dismiss, transfer, or stay the action. Dkt. # 34. The Court granted a stay pending the resolution of similar cases in the Southern District of New York relating to OW's bankruptcy. Dkt. # 54. The Court stayed the case for six years. These New York "test cases" have since been resolved; they generally held that under United States maritime law, subcontractors (here, Aegean) delivering bunker fuel do not have valid maritime liens over vessels for nonpayment unless they can show that the contractor (here, OW) was acting as an "agent" of the Vessel to engage specific subcontractors. *See U.S. Oil Trading LLC v. M/V VIENNA EXPRESS*, 911 F.3d 652, 662–63 (2d Cir. 2018). On facts much like those here, OW was not considered an "agent," so the subcontractor that delivered fuel did not have a maritime lien against the involved vessel. *See Clearlake Shipping Pte Ltd. v. NuStar Energy Servs., Inc.*, 911 F.3d 646, 651–52 (2d Cir. 2018); *see also Aegean Bunkering (USA) LLC v. M/T AMAZON*, 730 F. App'x 87, 89 (2d Cir. 2018); *O'Rourke Marine Servs. L.P., L.L.P. v. M/V COSCO HAIFA*, 730 F. App'x 89, 91 (2d Cir. 2018); *Chemoil Adani Pvt. Ltd. v. M/V MARITIME KING*, 742 F. App'x 529, 531 (2d Cir. 2018).

After the Court lifted the stay in December 2021, *see* Dkt. # 70, Canpotex moved to dismiss the case. Dkt. # 77. Aegean amended its complaint. Dkt. # 79. While the original complaint filed in 2015 asserted claims under U.S. law, the amended complaint asserted claims based on Canadian law, including its statute governing maritime liens.

In March 2022, Canpotex moved to dismiss Aegean's amended complaint. Dkt. # 82. The Court granted Canpotex's motion to dismiss but provided Aegean an opportunity to amend its complaint. Dkt. # 98. Aegean filed a second amended complaint ("SAC"), asserting five causes of action based on Canadian law. Dkt. # 99. Canpotex again moved to dismiss the SAC. Dkt. # 100. The Court granted this motion in part, as to the *in rem* maritime lien claims filed under Supplemental Admiralty Rule C but denied the motion as to all other claims. Dkt. # 109.

ORDER - 3

In this order, the Court clarified that causes of action two through five remained, clarifying that: (1) Aegean's breach of contract claim should be analyzed under Greek law and (2) Aegean's unjust enrichment claim should be analyzed under Canadian law. *See id.* at 20–26. The Court concluded that although the complaint was unclear whether (1) cause of action four, maritime attachment and garnishment under Supplemental Rule B, and (2) cause of action five, arrest of all bunkers on board the Supplemental Rule D, were "distinct causes of action" rather than "types of relief," they should not be dismissed because they "may rise and fall with the breach of contract and unjust enrichment claims." *Id.* at 27.

Canpotex now moves to vacate the Court's order to arrest the Vessel under Supplemental Rule E(4)(f) and Local Admiralty Rule ("LAR") 115(d).[3] Dkt. # 111. Because the Court dismissed Aegean's *in rem* maritime lien claim in its previous order, *see* Dkt. # 109, Canpotex requests a prompt hearing at which Aegean "must show cause why the arrest and writs of attachment and garnishment for [the Vessel] should not be vacated." Dkt. # 111 at 1–2. Canpotex contends that the Court should vacate the attachments under "SAR B and SAR D arising out of the *in personam* claims" because: (1) Aegean's contract claims fail under Greek law and (2) Aegean's claims of unjust enrichment fail under Canadian law. *See id.* at 2–3. The Court conferred with the parties on September 8, 2023, and set out another briefing schedule. Dkt. # 118; *see also* Dkt. # 119. Aegean filed its opposition,[4] to which Canpotex replied. The

---

[3] LAR 115(D) states: "Whenever property is attached, any person claiming an interest in the property shall be entitled to a hearing before a judicial officer on not less than five days' written notice to plaintiff. The person claiming the interest shall be entitled to an order vacating the attachment forthwith and granting other appropriate relief unless plaintiff shows cause at the hearing why such an order should not be granted." Because the parties dispute the use of Supplemental Rule E(4)(f) as a procedural basis for the motion to vacate, and do not meaningfully contest this local rule, but the Court will not consider it in its analysis.

[4] Aegean filed two oppositions to the motion to vacate. Dkt. ## 114, 119. The Court will consider both oppositions. Canpotex filed its reply. Dkt. # 121.

ORDER - 4

Court then held a Supplemental Rule E(4)(f) hearing on November 3, 2023. *See* Dkt. ## 122, 123.

### III
#### DISCUSSION

A.  Procedural Framework

Canpotex moves under Supplemental Rule E(4)(f), challenging Aegean's arrest and writs of attachment and garnishment; Canpotex seeks return of the $494,013 substitute security, plus interest accrued. Dkt. # 12 at 1.

Aegean responds that Canpotex's motion under Supplemental Rule E(4)(f) is untimely and an attempt to move for reconsideration under Local Rule 7(h). Dkt. # 114 at 2. Aegean also maintains that, because Canpotex's request for relief would effectively dismiss this action, the motion to vacate is "akin to a motion for summary judgment." Dkt. # 116 at 2.

    1.    Supplemental Admiralty Rules B, D, and E

        a.    Supplemental Rule B

Supplemental Rule B applies to *in personam* or *quasi in rem* actions[5] related to attachment and garnishment. To begin the attachment process, "if a defendant is not found within the district," a plaintiff must submit "a verified complaint" that includes "a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process." SAR B(1)(a). Supplemental Rule B

---

[5] As discussed, *see* Dkt. # 109 at 26 n.7, Supplemental Rule B refers to claims brought "*in personam*." But as several courts have observed, "[a]lthough Rule B states that it applies to 'an *in personam* action,' Fed. R. Civ. P. Supp. R. B(1), a maritime *in personam* claim is more appropriately styled a *quasi in rem* action." *DS-Rendite Fonds Nr. 108 VLCC Ashna GMBH & Co Tankschiff KG v. Essar Cap. Americas Inc.*, 882 F.3d 44, 47 (2d Cir. 2018). "[T]he nature of the jurisdiction the court acquires by a Rule B attachment is properly denominated 'quasi in rem' because any judgment rendered is limited to the value of the attached property." *Teyseer Cement Co. v. Halla Mar. Corp.*, 794 F.2d 472, 477 (9th Cir. 1986). Aegean styles its breach of contract and unjust enrichment claims as *quasi in rem* claims. Although Rule B *in personam* claims operate more like *quasi in rem* claims, for efficiency's sake, this order refers to these claims as *in personam*.

ORDER - 5

governs Aegean's (1): breach of contract claim (cause of action two), (2) unjust enrichment claim (cause of action three), and (3) the attachment and garnishment of the bunkers aboard the Vessel (cause of action four).  Dkt. # 99 at 10–12.

    b.  Supplemental Admiralty Rule D

Supplemental Rule D applies to all "actions for possession . . . with respect to the possession of cargo or other maritime property."  SAR D.  This rule controls any claims related to the arrest of the bunkers on board the Vessel (cause of action five).  Dkt. # 99 at 12–13.

    c.  Supplemental Admiralty Rule E

Supplemental Rule E provides the maritime attachment and garnishment procedure for *in personam* and *in rem* actions, complementing Supplemental Rules B and D.  It states: "Whenever property is arrested or attached, *any person claiming an interest in it* shall be entitled to *a prompt hearing* at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."  SAR E(4)(f) (emphasis added).

"Rule E(4)(f) is designed to satisfy the constitutional requirement of due process by guaranteeing to the shipowner [sic] a prompt post-seizure hearing at which [he or she] can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings."  SAR E (Notes of Advisory Committee on Rules—1985 Amendment).  "[T]he court is required to hold a hearing as promptly as possible to determine whether to allow the arrest or attachment to stand.  The plaintiff has the burden of showing why the seizure should not be vacated.  *Id.*  The plaintiff must demonstrate "a fair or reasonable probability" of success on the underlying claim.  *OS Shipping Co. v. Glob. Mar. Tr.(s) Priv. Ltd.*, 2011 WL 1750449, at *5 (D. Or. May 6, 2011) ("[T]he prevailing test appears to be a "probable cause" standard[.]")

ORDER - 6

Aegean asserts that Canpotex failed to file a verified statement of interest in the Vessel within the required timeframe and thus cannot be considered a party with an interest in the arrested or attached property under Supplemental Rule E(4)(f).  Aegean highlights that Supplemental Rule C(6)(a) provides that: "a person who asserts a right of possession or any ownership interest in the property that is the subject of the action[,]" must file a verified statement of right or interest: (A) within 14 days after the execution of process, or (B) within the time that the court allows[.]"  Because the maritime lien took effect in February 2015, *see* Dkt. # 12, and Canpotex filed its verified statement of interest on August 31, 2023, *see* Dkt. # 110, according to Aegean the motion to vacate is untimely.  Dkt. # 114 at 2; *see also* Dkt. # 120 at 8–9.

The Court disagrees.  As explained in the Court's previous order, *see* Dkt. # 109, Aegean's remaining causes of action against Canpotex are *in personam* claims.  Aegean does not explain why Supplemental Rule C, a rule that applies to *in rem* actions, should control.  Further, even if the Court were to apply a rule dedicated to *in rem* actions, Supplemental Rule C(6)(a) allows for a party to file a verified statement of right or interest "within the time that the court allows[.]"  Acknowledging that Supplemental Rule C does not apply to *in personam* claims, and that—even if it were to apply—the Court has the discretion to allow a party to file a verified statement of right or interest at any time, the Court concludes that Canpotex may proceed with its motion to vacate under Supplemental Rule E(4)(f).[6]

---

[6] Because Canpotex may proceed under Supplemental Rule E(4)(f), the Court declines to consider the merits of Aegean's argument that the motion to vacate purports to be a dispositive motion or motion to reconsider.

ORDER - 7

B.        Aegean's *In Personam* Claims

Canpotex seeks dismissal of Aegean's *in personam* claims: (1) breach of contract and (2) unjust enrichment. Dkt. # 99 at 10–11. The crux of Canpotex's position is as follows: because Aegean's remaining contract and unjust enrichment claims both fail as a matter of law, the Court should dismiss them, vacate the writ of attachment and arrest associated with them, and then dismiss this case. *See generally* Dkt. # 111. Aegean opposes. *See generally* Dkt. ## 114, 120. After conducting a Supplemental Rule E(4)(f) hearing, *see* Dkt. ## 122, 123, the Court DENIES the motion to vacate and concludes that Aegean has established "a fair or reasonable probability" of success on its underlying claims. *See OS Shipping Co.*, 2011 WL 1750449, at *5.

    1.  Second Cause of Action: Breach of Contract

The Court applies Greek law when assessing Aegean's breach of contract claim. *See* Dkt. # 109 at 21. Canpotex contends that there are two bases on which the Court should dismiss this cause of action: (1) Aegean's contract with OW (and by extension, Canpotex) contains a forum selection clause, which requires Aegean to sue in the Multi Member First Instance Court of Piraeus (Greek court); and (2) Aegean has already sued in the Greek court and has not prevailed on those claims. Dkt. # 111 at 6–8; *see also* Dkt. 121 at 9–11.

Canpotex first contends that, per the forum selection clause, Aegean's breach of contract claim must be adjudicated in Greece. Dkt. # 111 at 6. This is incorrect. The clause at issue states:

> All disputes arising in connection with this agreement or any agreement resulting hereof shall be referred to the Courts of Piraeus. For the sole benefit of the Seller [(Aegean)], it is further agreed that the Seller may proceed against the Buyer, any third party or the vessel *in such jurisdiction as the Seller in its sole discretion sees fit*, inter alia, for the purpose of securing payment of any amount due to the Seller from the Buyer.

ORDER - 8

Dkt. # 79-3 (emphasis added). Because the plain language of the contract states that "the seller," (here, Aegean), may file in any jurisdiction, the Court declines to consider Canpotex's assertion. *See Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 633 (9th Cir. 1982) ("[I]n an admiralty action, absent express intent to the contrary, a forum selection clause providing that all disputes under the charter will be determined by a selected foreign court neither precludes a plaintiff from commencing an action in the district court to obtain security by maritime attachment, nor prohibits the district court from ensuring the availability of security adequate to satisfy a favorable judgment by the selected forum.").

Next, Canpotex contends that, in December 2014, Aegean filed suit in the Court of Piraeus and since filing, the "Greek courts have found that Aegean does not have viable contractual claims against [Canpotex]." Dkt. # 111 at 8; *see also* Dkt. # 112 at 2. Aegean responds by highlighting that its "contract law claims have not been fully adjudicated in the Greek courts" and the Court "cannot rely on the Greek findings to vacate the attachment because the Greek [proceeding] has ongoing active appeals and litigation." Dkt. # 120 at 16; *see* Dkt. # 112 at 9. Furthermore, according to Aegean, the Greek "court's findings are based on a different predicate determination than in this case" because "the Greek court evaluated Aegean's contract claims by applying Greek law to Aegean's contract formation to find that [Defendants do not] have a contractual relationship with Aegean." Dkt. # 120 at 16. Yet in this case, Aegean notes that, under Canadian law, the Court has determined that a contract exists between Canpotex and Aegean. Aegean maintains that, if a contract exists between parties, then a breach of contract claim is a valid cause of action under Greek law. *Id.* at 16–17.

The Court concludes that it would be premature to decide any issues relating to this claim before the highest Court in Greece has heard Aegean's appeal. In fact, Canpotex's own expert stated that Aegean and Canpotex are scheduled to argue before the Greek Supreme Court on

January 15, 2024. Dkt. # 112 at 9. Although the parties have provided a cursory explanation of a breach of contract claim under Greek law in the briefing, because the Court lacks a comprehensive set of translated documentation from the Greek litigation, it lacks crucial information to consider Canpotex's request. Considering this issue is still being litigated in a parallel court system, the Court declines Canpotex's request to dismiss Aegean's breach of contract claim until, at minimum, it has reviewed a certified translation of sufficient documentation, such as the Supreme Court of Greece's final judgment and related briefing.[7]

The Court also recognizes that there may be material discrepancies between this Court's analysis and the Greek Supreme Court's forthcoming opinion because the parties report that the Greek courts have concluded that there is no contractual relationship between Canpotex and Aegean under Greek law. *See* Dkt. # 120 at 16; Dkt. # 111 at 8. Even still, because Aegean has shown that Greek Civil Code provides for breach of contract claims, *see generally* Dkt. # 120-2. the Court may require additional briefing once the Greek Supreme Court issues its opinion. Dkt. # 120-2 at 4–5, 8–24.

        2.        Third Cause of Action: Unjust Enrichment

Aegean alternatively brings a claim of unjust enrichment under Canadian law. *See* Dkt. # 99 at 10–11; *see also* Dkt. # 109 at 22–27; Dkt. # 120-1 at 10 ¶ 22 ("It is common in the Federal Court, and in other courts in Canada (e.g. the provincial superior courts in each province), for claims to be made in the alternative."). In its order on Canpotex's most recent motion to dismiss,

---

[7] Canpotex also contends that the Court should dismiss the contract claim under the theory of estoppel because Aegean has "broken assurances it provided to the Greek courts" that it would not bring *in personam* claims in the Western District of Washington. Dkt. # 121 at 11. Yet Canpotex cites no law to support this argument; nor has Canpotex provided the Court with a full set of translated briefing and judicial opinions from the ongoing Greek matter. Although Canpotex asserts that "[c]omplete Greek to translations of all the rulings in this case would be both extremely expensive and rather time consuming," the Court is unpersuaded. *See* Dkt. 112 at 4. Canpotex moves the Court to dismiss Aegean's claims and—recognizing the gravity of this request and the fact that the Greek litigation case is not final—the Court declines to estop Aegean from bringing this claim.

ORDER - 10

the Court determined that it would "apply Canadian unjust enrichment law." Dkt. # 109 at 23. The Court then found that Aegean had alleged a plausible unjust enrichment claim but, "without more information about Canadian law," it would not dismiss this claim. Dkt. # 109 at 25.

A cause of action for unjust enrichment occurs under Canadian law if "something . . . [has] been given by the plaintiff and received and retained by the defendant without juristic reason." *Kerr v. Baranow*, [2011] 1 S.C.R. 269, ¶ 31; *see also* Dkt. # 109 at 23. Canadian law "permits recovery whenever the plaintiff can establish three elements": (1) "an enrichment of or benefit to the defendant," (2) "a corresponding deprivation of the plaintiff," and (3) "the absence of a juristic reason for the enrichment." *Kerr v. Baranow*, [2011] 1 S.C.R. 269, ¶ 32.[8]

The third element—absence of a juristic reason—is met when "there is no reason in law or justice for the defendant's retention of the benefit conferred by the plaintiff, making its retention 'unjust' in the circumstances of the case." *Id.* at ¶ 40. The juristic reason analysis is two-fold: at the first stage of the inquiry "a claimant . . . must show that there is no juristic reason within the established categories that would deny it recovery." *Pac. Nat'l Invs. Ltd. v. Victoria (City)*, [2004] 3 S.C.R. 575, ¶ 23. These established categories include "the existence of a contract[.]" *Id.* "Where the enrichment results from the performance of a valid contractual obligation, the general policy favouring the security of transactions weighs against the intervention of restitutionary claims, such as unjust enrichment." *LBP Holdings Ltd. v. Allied Nevada Gold Corp.*, [2016] 130 O.R. (3d) 401, ¶ 68 (holding that because there was an enforceable contract between the parties, "the plaintiff's claim for unjust enrichment [had] no reasonable chance of success"); *see Kosaka v. Chan*, [2009] B.C.C.A. 467, ¶ 17. After proving that "none of these limited categorical reasons exist, the plaintiff will have made out a prima

---

[8] Canpotex does not dispute the first two elements of unjust enrichment. *See* Dkt. # 111 at 9–10.

facie case of unjust enrichment." *Pac. Nat'l Invs. Ltd. v. Victoria (City)*, [2004] 3 S.C.R. 575, ¶ 23. At the second stage of the analysis, "the onus shifts to the defendant to rebut the prima facie case by showing there is some other valid reason to deny recovery." *Id.*

Canpotex contends that Aegean fails to demonstrate a lack of a juristic reason "because there is an enforceable contract between Aegean." Dkt. # 111 at 9–10; *see also* Dkt. # 113 at 3–4. Aegean opposes, asserting that it has alleged a plausible alternative cause of action and that the cases Canpotex includes in it motion and accompanying declaration, *see* Dkt. ## 111, 113, are "easily distinguishable." Dkt. # 120 at 19; *see* Dkt. # 120-1 at 10–12. While Aegean agrees that "where a valid contract exists, relief by way of unjust enrichment is often not available," it contends that its recovery on this claim may depend "on whether the contract in issue provides a reason for the conferral of a benefit (enrichment) on the defendant and the deprivation of the plaintiff." Dkt. # 120-1 at 11 ¶ 25.

The Court acknowledges that, under Canadian law, the existence of a contract may, but does not always, bar a claim under unjust enrichment. In *Noh v. Plaza 88 Developments Ltd.*, the British Columbia Court of Appeal considered a dispute involving the parties to a construction and real estate development contract; there, the plaintiff performed certain services outside the scope of a fee agreement and later sought compensation for this work. [2011] B.C.C.A. 461. The *Noh* court determined that although there was a valid contract between the parties, the lawsuit was "obviously not a case where [plaintiff sought] double recovery both under the contract and in unjust enrichment." *Id.* at ¶ 72. The court instead concluded that "[d]ue perhaps to unfortunate drafting of the amended agreement, [plaintiff] was deprived of his fee under the contract. But it cannot be reasonably said that he provided his services gratuitously to an unwilling party. As the trial judge found, [plaintiff] expected to be paid and [defendant] expected to pay him." *Id.* at ¶ 73. The appellate court thus held that the trial court did not err "in

concluding that the contract between the parties did not constitute a juristic reason for [defendant's] enrichment" and "did not err in finding that Mr. Noh was entitled to compensation pursuant to [unjust enrichment]." *Id.* at ¶ 74.

Although Aegean does not seek damages based on services rendered outside the scope of the parties' agreement, the Court can infer parallels between the *Noh* Court's reasoning and the complex choice-of-law issues at hand. Here, under the background law of Canada, a contract binds the parties. And under that contract, any contractual claims arise under Greek law. Canpotex maintains that when applying Greek law, Aegean fails to state a claim for a breach of contract. As discussed above, without weighing the merits of Aegean's breach of contract claim, the Court declines its dismissal. Still, there is the possibility that, if the Greek Supreme Court upholds the lower courts' decision and dismisses Aegean's claims, this Court may also ultimately dismiss Aegean's breach of contract claim.

Meanwhile, Canadian jurisprudence says that a valid contract may bar recovery under a theory of unjust enrichment because of a "general policy" that favors "the security of transactions weighs against the intervention of restitutionary claims." *LBP Holdings Ltd. v. Allied Nevada Gold Corp.*, [2016] 130 O.R. (3d) 401, ¶ 68. Yet *Noh* places an equitable spin on this principle. In *Noh*, the court also suggested that a valid contract is a "juristic reason" because it prevents plaintiffs from double recovery under both a valid contract claim and unjust enrichment theory. [2011] B.C.C.A. 461, ¶ 72 ("This is obviously not a case where Mr. Noh seeks double recovery both under the contract and in unjust enrichment."). Because the *Noh* court saw that the "unfortunate drafting" of the contract barred defendant's payment to plaintiff, it ultimately concluded that the contract did not constitute a juristic reason for the defendant's enrichment. *Id.* at ¶ 73.

Here, the contract that binds the parties appears to go so far as to recognize a contract that would bar an unjust enrichment claim but might not go far enough to allow Aegean to recover in contract. *See* Dkt. # 109 at 25–26. The *Noh* court's rationale shows that, in a case such as this, a contract that does not threaten double recovery may not necessarily bar an unjust enrichment claim. *See also Kerr v. Baranow*, [2011] S.C.C. 10, ¶31 ("At the heart of the doctrine of unjust enrichment lies the notion of restoring a benefit which justice does not permit one to retain.").

Considering that it is unclear whether Aegean may recover on its breach of contract claim and recognizing that Aegean has plausibly alleged that Canpotex received the benefits of the fuel bunkers without compensating Aegean, the Court declines to dismiss this claim. *See* Dkt. # 109 at 24 ("If it turns out that Canpotex has paid OW's successor-in-interest in full for the bunker fuel, then this claim would fail, as Canpotex would not be unjustly enriched. Similarly, if Canpotex made partial payments to OW's successor-in-interest to satisfy its debt, that amount would be deducted from the amount potentially owed to Aegean. And if Canpotex contributed to OW's bankruptcy estate in some way, this too would affect the calculation of how much Canpotex was unjustly enriched."). Accordingly, the Court determines that Aegean has made out a prima facie case of unjust enrichment and Canpotex has failed to rebut this showing.

## IV
### Conclusion

For these reasons, the Court DENIES the motion to vacate, concluding that Aegean has shown "a fair or reasonable probability" of success on its breach of contract and unjust enrichment claims. *See OS Shipping Co.*, 2011 WL 1750449, at *5. The Court DIRECTS the parties to meet, confer, and provide the Court with updated discovery deadlines in a Joint Status Report by no later than January 31, 2024.

Dated this 3rd day of November, 2023.

John H. Chun
United States District Judge

ORDER - 15